

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 MAY 28  AM 10: 25

CLERK'S OFFICE
AT GREENBELT

BY_____ m ___DEPUTY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BRANDON SODERBERG,**
    2934 N. Calvert St., Apt B
    Baltimore, MD 21218;

**BAYNARD WOODS,**
    601 N. Eutaw St.
    Baltimore, MD 21201;

**OPEN JUSTICE BALTIMORE,**
    1601 Guilford Ave., 2 South
    Baltimore, MD 21202;

**BALTIMORE ACTION LEGAL TEAM,**
    1601 Guilford Ave., 2 South
    Baltimore, MD 21202;

**QIANA JOHNSON,**
    13802 S. Springfield Rd.
    Brandywine, MD 20613
    Prince George's County;

**LIFE AFTER RELEASE,**
    4710 Auth Pl., Second Floor
    Camp Springs, MD 20744
    Prince George's County;

        *Plaintiffs,*

v.

**Hon. W. MICHEL PIERSON,** as
Administrative Judge for Maryland's
Eighth Judicial Circuit,
    111 N. Calvert Street
    Baltimore, MD 21202;

RDB 19 CV 1559

**COMPLAINT**

Civil Action No. RDB 19 CV 1559

**Hon. SHEILA R. TILLERSON ADAMS,**
as Administrative Judge for Maryland's
Seventh Judicial Circuit,
    14735 Main Street
    Upper Marlboro, MD 20772
    Prince George's County;

**PATRICIA TRIKERIOTIS,** as Court
Reporter for Baltimore City,
    111 N. Calvert Street, Suite 515
    Baltimore, MD 21202; and

**ROBIN WATSON,** as Court Reporter for
Prince George's County,
    14735 Main Street
    Upper Marlboro, MD 20772
    Prince George's County;

        *Defendants.*

## INTRODUCTION

1.     In recent years, as popular interest in our criminal-justice system has reached new heights, a vibrant public discourse has emerged surrounding the ways we police, prosecute, and punish people accused of crimes.

2.     This discourse has spurred important changes in criminal-justice policy across the country, including in Maryland. In 2016, the Maryland General Assembly enacted a set of reforms designed to improve reentry services for ex-offenders, expand support for crime victims, and reduce sentences for nonviolent offenders.[1]

---

[1] *See* Justice Reinvestment Act, 2016 Md. Laws 6239-6441, https://perma.cc/EK3Q-E5H6.

The following year, the Maryland Court of Appeals adopted new rules to minimize the use of cash bail in state trial courts, joining a nationwide movement to reduce the harmful impact of cash-bail systems on indigent communities.[2]  And, most recently, voters across Maryland—including in Baltimore City and Prince George's County—elected State's Attorneys who campaigned expressly on reform-oriented platforms.[3]

3.       Marylanders are eager to see what impact these changes will have on people's daily lives.  And nowhere will that impact be more visible than inside the courtroom—one of the few places where the public can see the State's new policies and prosecutors in action.  Access to court proceedings plays a central role in ensuring that citizens can understand and ultimately shape how their justice system works.  As Justice Frankfurter once explained, "[o]ne of the demands of a democratic society is that the public should know what goes on in courts by being told by the press what happens there, to the end that the public may judge whether our system of criminal justice is fair and right." *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 920 (1950) (Frankfurter, J., respecting the denial of certiorari).

---

[2] *See* Michael Desser, *Maryland Court of Appeals: Defendants Can't Be Held in Jail Because They Can't Afford Bail*, BALTIMORE SUN, Feb. 8, 2017, https://perma.cc/Y2HK-ZRPC.

[3] *See, e.g.*, Tim Prudente, *Marilyn Mosby Wins Re-Election in Three-Way Race for Baltimore State's Attorney*, BALTIMORE SUN, Jun. 26, 2018, https://perma.cc/H7KS-6FB7 (describing Baltimore City's incumbent State's Attorney's campaign "pledge[ ] to quicken her efforts to bring criminal justice reform to Baltimore"); Rachel Chason, *They Are Running for County Prosecutor, But Their Top Focus Is Rehabilitation*, WASH. POST., Jun. 15, 2018, https://perma.cc/6D6D-DHMF (describing progressive platforms of candidates for State's Attorney in Prince George's County).

4.      Unfortunately, Maryland law impedes the public's ability to do just that. The State prohibits people from disseminating digital recordings of criminal court proceedings—even though the State itself makes copies of those recordings publicly available. While people may obtain audio recordings of virtually any criminal trial proceeding under Maryland court rules, a controversial state law prohibits them from sharing those recordings with the broader public. As a result, people who obtain copies of court recordings are effectively barred from using them to engage in a broader public dialogue about their judicial system.

5.      This regime violates the Constitution's dual guarantees of freedom of speech and freedom of the press. Those protections ensure that when the press or the public "lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publishing Company*, 443 U.S. 97, 103 (1979). That is especially true when the information concerns proceedings that occurred in open court. After all, "[w]hat transpires in the court room is public property. . . . Those who see and hear what transpired can report it with impunity." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

6.      Plaintiffs in this case seek to vindicate these longstanding constitutional principles. Although they hope to use Maryland's court recordings for different purposes—some for journalistic ends, some for civic education, and some for political advocacy—all of them plan to use the recordings for a common goal: to promote

3

democratic accountability within our criminal-justice system.  Because Maryland's ban on broadcasting court recordings contravenes that goal—in violation of core First Amendment principles—this Court should enter a declaratory judgment holding the ban unconstitutional.

## JURISDICTION & VENUE

7.      Plaintiffs bring this action under 42 U.S.C. § 1983, and this Court has jurisdiction over the action under 28 U.S.C. § 1331.

8.      Venue is proper in the District of Maryland under 28 U.S.C. § 1391(b) because all Defendants reside within the State of Maryland.

## FACTUAL AND LEGAL BACKGROUND

### A.      The Public's Right of Access to Maryland Trial-Court Recordings

9.      Maryland court rules require all proceedings held before a trial-court judge to be "recorded verbatim in their entirety."  Md. Rule 16-503(a) (circuit courts); Md. Rule 16-502(a) (district courts).  Many trial courts across the State, including the Circuit Courts for Baltimore City and Prince George's County, comply with this requirement by creating audio recordings of all judicial proceedings.

10.      Under the rules, all trial courts must make copies of these recordings available to the public.  The rules expressly provide that, except in rare circumstances, the "authorized custodian of an audio recording shall make a copy of the audio recording . . . available to any person upon written request."  Md. Rule 16-504(h)(1)

(referring to circuit-court recordings); *see also* Md. Rule 16-502(g)(1) (same requirement for district-court recordings).[4]

11.     Some trial courts maintain both audio and video recordings of their proceedings. Although these courts are not required to provide copies of video recordings to the public (as they must do with audio recordings), nothing in the rules precludes them from doing so. In the past, the Baltimore City Court Reporter's office has occasionally provided copies of video recordings to members of the public upon written request.

12.     Trial judges retain authority under the rules to redact certain portions of court recordings before the recordings are released to the public. Specifically, if a court finds that certain portions of a recording "should and lawfully may be shielded from public access and inspection, the court shall direct that appropriate safeguards be placed on that portion of the recording." Md. Rule 16-504(g).

**B.      Maryland's Prohibition on Broadcasting Trial-Court Recordings**

13.     Even though Maryland court rules guarantee public access to trial-court recordings, Maryland legislators have nonetheless sought to restrict the public's ability to disseminate those recordings. In 1981, shortly after the State judiciary adopted a pilot program permitting the press to record and broadcast trial-court proceedings, the General Assembly enacted legislation terminating the program and banning the

---

[4] The full text of Maryland Rule 16-504 is available at https://perma.cc/A2HB-Q8A5. The full text of Rule 16-502 is available at https://perma.cc/2P63-JVBT.

"recording or broadcasting" of any criminal trial-court proceeding.  1981 Md. Laws

2782, 2782-84 (Ch. 748).

14.    That ban remains in effect today.  Now codified at § 1-201 of Maryland's

Code of Criminal Procedure, the provision reads as follows:

*Application to trials, hearings, motions, or arguments*

(a)  (1)  Except as provided in subsection (b) of this section, **a person
     may not record or broadcast any criminal matter, including
     a trial, hearing, motion, or argument, that is held in trial
     court** or before a grand jury.
     (2)  This prohibition applies to the use of television, radio, and
     photographic or recording equipment.

*Electronic or photographic equipment approved by court*

(b)  Subsection (a) of this section does not apply to the use of electronic
     or photographic equipment approved by the court:
     (1)  to take the testimony of a child victim under § 11-303 of this
     article; or
     (2)  to perpetuate a court record.

*Contempt of court for violations of section*

(c)  A person who violates this section **may be held in contempt of
     court**.

Md. Code, Crim. Proc. § 1-201 (emphases added).

15.    As the text of § 1-201 makes clear, the statute's broadcasting ban sweeps

quite broadly.  It prohibits the broadcast not only of *live* court proceedings but also of

*previously recorded* proceedings, including recordings from cases that have long since

ended.  The statute also does not distinguish between proceedings that involve

witnesses or jurors (such as "trial[s]" and evidentiary hearings) and those that involve only attorneys and judges (such as "motion[s]" hearings and "argument[s]").

16.     At the same time, § 1-201 contains gaps that allow for the broadcast of court proceedings that involve essentially the same subject matter as criminal trial proceedings. For instance, the statute does not prohibit the broadcast of *appellate* proceedings, including appeals in criminal cases. *See* Md. Code, Crim. Proc. § 1-201(a) (prohibiting the broadcast only of matters "held in trial court or before a grand jury"). And a separate court rule expressly permits such proceedings to be broadcast. *See* Md. Rule 16-603 (permitting "extended coverage," including recording and broadcasting, of proceedings in "appellate courts"). Thus, while the statute would prohibit the broadcast of a sentencing hearing held in circuit court, it would permit the broadcast of an appellate argument on the same issue, in the same case, involving the same lawyers.

17.     Similarly, because § 1-201 applies only to "criminal matter[s]," it does not bar the broadcast of *civil* trial proceedings. *See also* Md. Rule 16-603 (permitting "extended coverage," including recording and broadcasting, of civil trial proceedings). Thus, the statute would prohibit the broadcast of jury selection in a criminal trial but permit the broadcast of a subsequent habeas corpus proceeding challenging the jury-selection process in that same trial.

18.     Local court officials have the authority to initiate (or, alternatively, ask local prosecutors to initiate) contempt proceedings against people who violate

§ 1-201. *See generally* Md. Rule 15-205(b) (listing persons authorized to initiate constructive criminal-contempt proceedings); Md. Rule 15-206(b) (listing persons authorized to initiate constructive civil-contempt proceedings). In practice, the administrative judge of a circuit or county typically bears responsibility for initiating contempt proceedings for violations of § 1-201 that arise from the broadcast of recordings from that circuit or county's courts.

19.     The authorized custodian of those recordings—usually, the court reporter for that circuit or county—shares responsibility for enforcing § 1-201's broadcasting ban. In practice, court reporters view the enforcement of § 1-201 as one of their responsibilities and typically play a role in deciding how court officials will respond to violations of the statute, including whether to pursue contempt sanctions.

**C.     Section 1-201's Chilling Effect on Plaintiffs' Speech and Reporting Activities**

20.     Plaintiffs are journalists, activists, lawyers, and community organizers who seek to use recordings of Maryland criminal proceedings to enhance the public's understanding of the criminal-justice system. To that end, each Plaintiff has lawfully obtained copies of certain court recordings—all from proceedings that occurred in open court—under Maryland's court rules. They have refrained from disseminating these recordings, however, out of fear that they might be held in contempt for doing so under § 1-201.

21.     Plaintiffs **Brandon Soderberg** and **Baynard Woods** are Baltimore-based journalists who are currently working on a book and a documentary film about the Baltimore Police Department's Gun Trace Task Force.  Mr. Soderberg is a former editor of the *Baltimore City Paper* and one of the founders of *Baltimore Beat*, an independent media outlet covering local politics, art, culture, and activism.  Mr. Woods is a former *City Paper* and *Real News Network* editor whose work has appeared in the *New York Times*, the *Washington Post*, the *Guardian*, and many other outlets.  Over the past several years, the Baltimore City Court Reporter's office has provided Mr. Soderberg and Mr. Woods with copies of several audio recordings, as well as one video recording, of Baltimore City Circuit Court proceedings.  Mr. Soderberg and Mr. Woods intend to use these recordings in their documentary film, among other reporting projects.

22.     Plaintiffs **Open Justice Baltimore** (OJB) and the **Baltimore Action Legal Team** (BALT) are organizations that support community-centered efforts to improve the criminal-justice system.  Among their other shared goals, both organizations seek to improve the transparency of Baltimore's legal system and help the public better understand how that system works.  OJB develops open-source data projects to shine a light on the actions of the Baltimore Police Department, the State's Attorney's Office, the Baltimore court system, and other officials.  BALT is a coalition of lawyers who provide volunteer legal support to Baltimore communities seeking to exercise their civil liberties and protest injustices rooted in structural racism

and economic inequality.  Together, OJB and BALT have lawfully obtained copies of
audio recordings of Baltimore City Circuit Court proceedings from the Baltimore City
Court Reporter's office.  They intend to use these recordings in their efforts to
educate the public and increase transparency within Baltimore's legal system.  In
particular, the two organizations plan to post the recordings online, play them at
community events (including know-your-rights events for community members and
legal trainings for volunteer lawyers), share them on social media, and potentially
include them on podcasts.

23.     Plaintiff **Qiana Johnson** is a community organizer in Prince George's
County and the founder of Plaintiff **Life After Release**, a community-based
organization that seeks to empower individuals, families, and communities affected by
the criminal-justice system.  Among its other projects, Life After Release coordinates
a local court-watching program aimed at increasing accountability and promoting
positive change within Prince George's County's judicial system.  The organization
also provides support to people facing criminal charges through its "participatory
defense" efforts, which promote greater family and community involvement in the
adjudicative process.  Ms. Johnson and Life After Release have lawfully obtained
audio recordings of Prince George's County Circuit Court proceedings from the
Prince George's County Office of Court Reporters.  The recordings come from
proceedings in which Ms. Johnson was invited to address the court on behalf of
criminal defendants who asked her to advocate on their behalf as a community

member.  Ms. Johnson and Life After Release plan to post the recordings on their websites and play them at meetings in order to highlight the impact of their participatory-defense work and teach others how to become effective community advocates.[5]

24.     Section 1-201 has had a severe chilling effect on Plaintiffs' protected speech and reporting activities.  Plaintiffs hope to publish and share the various court recordings in their possession, but they have not done so because they understand that court officials may seek to hold them in contempt under § 1-201.  Plaintiffs are not wealthy or well-connected and cannot afford to subject themselves to the risk of such sanctions.  Their fear of punishment under § 1-201 has thus hindered—and continues to hinder—their ability to contribute to public discourse surrounding Maryland's criminal-justice system.

25.     Section 1-201's chilling effect on Plaintiffs' speech and reporting impedes the public's ability to learn about their local courts and law-enforcement officials.  Most people cannot afford to attend criminal court proceedings regularly, given the time and potential lost income required to do so.  Instead, they rely on the work of journalists, activists, and community leaders—like Plaintiffs—to keep informed about what happens during such proceedings.  By suppressing Plaintiffs' ability to engage in their reporting and speech activities, § 1-201 deprives not just

---

[5] Life After Release, OJB, and BALT are unincorporated associations.

Plaintiffs but also the public as a whole of essential information about their justice system and public officials.

26.     Plaintiffs' fear of prosecution is well founded.  In recent years, Maryland court officials—including Defendants named in this suit—have repeatedly considered holding members of the media in contempt for violating § 1-201.  In 2016, Baltimore court officials publicly considered holding in contempt the producers of *Serial*, the popular investigative-reporting podcast, for playing excerpts of criminal trial proceedings on their show.[6]  Earlier this year, Baltimore City's administrative judge, Defendant W. Michel Pierson, sent a letter to a cable television network admonishing the network for including video footage of the same proceedings in a documentary. And, just last month, Judge Pierson sent another letter to a different journalist warning her that it would be unlawful for her to include courtroom audio on her podcast.  These actions make clear that the threat of enforcement under § 1-201 is real.

**D.     Court Officials Have Failed to Identify Any Harms That Might Result from Plaintiffs' Proposed Speech and Reporting Activities**

27.     Plaintiffs have sought clarity from court officials on both the purpose and the scope of § 1-201's broadcasting ban.  Court officials have refused to respond

---

[6] Justin Fenton, *Court Officials Considered Contempt for 'Serial' Producers for Airing Courtroom Audio*, BALTIMORE SUN, Dec. 21, 2016, https://www.baltimoresun.com/news/maryland/baltimore-city/bs-md-ci-serial-court-recordings-20161221-story.html (quoting Maryland judiciary spokesperson's explanation for court's decision not to pursue contempt).

to those inquiries, however, exacerbating Plaintiffs' fear of disseminating court recordings and their confusion over the statute's scope.

28.    On May 2, 2019, Mr. Soderberg, Mr. Woods, OJB, and BALT (the Baltimore Plaintiffs) submitted letters, through counsel, to Baltimore City's administrative judge, Defendant W. Michel Pierson, to notify him of their plans to disseminate recordings of Circuit Court proceedings. *See* Exhibit A (Letter from B. Soderberg & B. Woods); Exhibit B (Letter from OJB & BALT). The letters outlined the Baltimore Plaintiffs' belief that they enjoy a clear First Amendment right to disseminate the recordings and asked court officials to identify any "state interest[s]" that might justify the suppression of their speech and reporting activities. The Baltimore Plaintiffs also offered to identify the specific recordings they intend to use and noted that they would consider any information court officials provided in response to the letters before disseminating any of the recordings. Finally, the Baltimore Plaintiffs sought clarity as to whether their intended uses of the recordings would constitute "broadcasting" under § 1-201 and whether the statute's "contempt" provision refers to civil or criminal contempt.

29.    The Baltimore Plaintiffs asked court officials to respond to their letter by May 16. When officials failed to respond by that date, Plaintiffs' counsel sent the officials a follow-up inquiry, via email, on May 20. Despite that follow-up inquiry, Baltimore court officials never responded to the Baltimore Plaintiffs' letter.

30.     On May 14, 2019, Ms. Johnson and Life After Release (the Prince

George's County Plaintiffs) submitted a letter, through counsel, to the administrative

judge of Prince George's County, Defendant Sheila R. Tillerson Adams, to notify her

of their plans to disseminate recordings of Circuit Court proceedings.  Exhibit C

(Letter from Q. Johnson & Life After Release).  The letters outlined Ms. Johnson and

Life After Release's belief that they enjoy a clear First Amendment right to

disseminate the recordings and asked court officials to identify any "state interest[s]"

that might justify the suppression of their speech and reporting activities.  Ms.

Johnson and Life After Release also offered to identify the specific recordings they

intend to use and noted that they would consider any information court officials

provided in response to the letters before disseminating any of the recordings.

Finally, Ms. Johnson and Life After Release sought clarity as to whether their intended

uses of the recordings would constitute "broadcasting" under § 1-201 and whether the

statute's "contempt" provision refers to civil or criminal contempt.

31.     The Prince George's County Plaintiffs asked court officials to respond

to their letter by May 24.[7]  Plaintiffs' counsel sent the court officials a follow-up email

on May 22 to inquire into whether the officials would be able to respond to the Prince

---

[7]  On May 15, one day after the Prince George's County Plaintiffs emailed their letter to
court officials, an administrative assistant in the Prince George's County clerk's office emailed
Plaintiffs' counsel (while copying several other court employees) to say that the court "do[es] not
accept email or faxed correspondence."  In response, Plaintiffs' counsel mailed a paper copy of
the letter to court officials on the morning of May 15.

George's County Plaintiffs' letter by May 24.  Court officials never responded to that follow-up inquiry or to the original letter.

### E.   Defendants' Official Positions and Responsibilities

32.   Defendant **W. Michel Pierson** is the administrative judge for Baltimore City and Maryland's Eighth Judicial Circuit.  Judge Pierson is one of the officials responsible for initiating contempt proceedings under § 1-201 in Baltimore City.  He is sued in his official capacity.

33.   Defendant **Sheila R. Tillerson Adams** is the administrative judge for Prince George's County and Maryland's Seventh Judicial Circuit.  Judge Adams is one of the officials responsible for initiating contempt proceedings under § 1-201 in Prince George's County.  She is sued in her official capacity.

34.   Defendant **Patricia Trikeriotis** is the chief court reporter for Baltimore City.  She is the authorized custodian of all audio and video recordings of all proceedings that occur in Baltimore City Circuit Court and Baltimore City District Court.  Ms. Trikeriotis is one of the officials responsible for initiating contempt proceedings under § 1-201 in Baltimore City.  She is sued in her official capacity.

35.   Defendant **Robin Watson** is the court reporter for Prince George's County.  She is the authorized custodian of all audio and video recordings of all proceedings that occur in Prince George's County Circuit Court and Prince George's County District Court.  Ms. Watson is one of the officials responsible for initiating

contempt proceedings under § 1-201 in Prince George's County.  She is sued in her official capacity.

## CAUSES OF ACTION

36.     All of the preceding paragraphs are incorporated herein, as if re-alleged in this section.

## COUNT I:  FIRST AMENDMENT
### (against all Defendants under 42 U.S.C. § 1983)

37.     The First Amendment prohibits government officials from "abridging the freedom of speech, or of the press."  U.S. Const. amend. I.  Those words reflect our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

38.     In light of that commitment, the First Amendment generally precludes the government from suppressing the dissemination of truthful information about issues of civic importance.  *See Bartnicki v. Vopper*, 532 U.S. 514, 527-28 (2001) ("As a general matter, 'state action to punish the publication of truthful information seldom can satisfy constitutional standards.'" (citation omitted)).  Thus, when a member of the press or the public "lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order."  *Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989) (citation omitted).

39.     This principle applies with special force to information about public

court proceedings.  *See, e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975)

("With respect to judicial proceedings in particular, the function of the press serves to

guarantee the fairness of trials and to bring to bear the beneficial effects of public

scrutiny upon the administration of justice.").  For this reason, the Supreme Court has

specifically held that the First Amendment "command[s] nothing less than that the

States may not impose sanctions on the publication of truthful information contained

in official court records open to public inspection."  *Id.* at 495; *see also Craig v. Harney*,

331 U.S. 367, 374 (1947) ("If a transcript of the court proceedings had been

published, we suppose none would claim that the judge could punish the publisher for

contempt.").

40.     Defendants have not identified a "state interest of the highest order" to

justify Maryland Code of Criminal Procedure § 1-201's blanket ban on broadcasting

recordings of criminal trial-court proceedings.  Although Plaintiffs repeatedly sought

to engage Defendants in a dialogue regarding any state interests that § 1-201 might

serve, Defendants ignored Plaintiffs' inquiries.  Defendants have also failed to make

any public statements identifying any state interests to justify § 1-201's ban on

broadcasting trial recordings.

41.     Maryland's own court rules give every member of the public the right to

inspect and obtain recordings of any criminal proceeding that occurred in open court.

The State's decision to make the recordings public in these ways belies any "state

17

interest[s]" it might proffer to justify its prohibition on private parties' subsequent dissemination of the recordings. *See Ostergren v. Cuccinelli*, 615 F.3d 263, 291 (4th Cir. 2010) (Davis, J., concurring) ("Considering a state's view and its actual conduct is particularly important in First Amendment cases like this one, in which the Commonwealth, a party to the case, undertakes to punish an individual for re-publishing information initially published by the Commonwealth itself.").

42.     Nor can any purported justifications for § 1-201 be squared with Maryland's broader regulatory regime.  A separate rule already authorizes court officials to redact any portions of court recordings that "lawfully may be shielded from public access and inspection."  Md. Rule 16-504(g).  This fine-grained mechanism for preventing identifiable harms to the public welfare obviates the need for § 1-201's wholesale ban on broadcasting court recordings.  What's more, § 1-201 is itself poorly suited to protect against the disclosure of sensitive information about criminal proceedings:  As noted above, Maryland law expressly permits the broadcast of criminal appellate proceedings and civil trial proceedings—even when those proceedings involve the same parties, subject matter, and attorneys as criminal trial proceedings. *See* Md. Rule 16-603.  In short, the under-inclusiveness of § 1-201's broadcasting ban and the availability of other means for safeguarding sensitive information undermine any plausible rationale the State might offer to justify the prohibition.

43.     In any event, even if the State could identify a plausible rationale for restricting the broadcast of all criminal trial proceedings, that rationale would likely run counter to the experiences of numerous other jurisdictions.  Many state and federal courts make recordings available to the public for all of their trial proceedings, without imposing any restrictions on the dissemination of those recordings.  None of those courts has suffered any great harm (reputational or otherwise) from allowing its recordings to be freely shared.  It is not clear why Maryland—which appears to be the only jurisdiction that bans the broadcast of *publicly available* court recordings—has a unique interest in shielding its recordings from broader public exposure.

44.     Finally, any rationale the State offers in support of § 1-201 is unlikely to justify the statute's sweeping breadth.  For instance, even if the State were to identify a rationale for its ban on *live* broadcasts of criminal trials, that rationale likely would not support the ban on broadcasts of trial *recordings*—especially recordings from closed cases.  Similarly, whatever reasons the State might offer to justify a ban on broadcasting the testimony of private citizens, those justifications would not support the ban on broadcasting the testimony of public officials or broadcasting hearings that do not involve any testimony at all.

45.     In sum, because Maryland has not identified—and cannot identify—a governmental interest sufficient to justify its blanket ban on broadcasting publicly available court recordings, § 1-201 cannot survive constitutional scrutiny.  People who

lawfully obtain copies of such recordings, therefore, cannot constitutionally be punished for disseminating them—including via broadcast.

## COUNT II:  DUE PROCESS – VAGUENESS
### (against all Defendants under 42 U.S.C. § 1983)

46.     The Due Process Clause of the Fourteenth Amendment provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

47.     Section 1-201 violates the Due Process Clause because it is written in terms so vague as to deprive the public of fair notice as to what it prohibits and what punishment it imposes.

48.     As noted above, § 1-201 provides that "a person may not . . . broadcast any criminal matter." The statute, however, fails to define the term "broadcast." That omission makes it virtually impossible to determine the scope of conduct prohibited by § 1-201.  Nor have any state-court decisions clarified the term's reach. Quite the contrary: The Maryland Court of Appeals has recognized that the word "broadcast" can have a variety of different meanings.  *Norman v. Century Athletic Club*, 193 Md. 584, 590 (1949) ("It may often have been said, with reference to telegraph or

newspapers, that news, gossip, a baseball game or a prize-fight was broadcasted, or with reference to a loudspeaker or amplifier, that a speech was broadcasted."). The term is so malleable, in fact, that even government agencies tasked with regulating broadcasters have struggled with its meaning. *See, e.g., National Ass'n For Better Broad. v. FCC*, 849 F.2d 665, 667 (D.C. Cir. 1988) ("The [Federal Communications] Commission [has] exhibited some inconsistency in its treatment of various forms of subscription television service as being or not being 'broadcasting.'").

49.     Section 1-201 is also vague as to the nature of the type of punishment that may be imposed on someone who violates the statute. *See Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999) (explaining that statutes may "violate due process if they do not afford fair notice of the penalty that applies to the forbidden conduct"). Although § 1-201(c) provides that a "person who violates this section may be held in contempt of court," the statute does not specify whether the contempt sanction would be civil or criminal in nature. As a result, it is not clear whether a violation of the statute would be punishable by imprisonment, a fine, civil penalties, or something else entirely.

50.     Ordinarily, regulated parties may "seek clarification from appropriate administrative sources" on the meaning of ambiguous laws. *Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Envtl. Control*, 317 F.3d 357, 367 (4th Cir. 2002). But court officials have refused to clarify the scope of the term "broadcasting" or the nature of the punishment that may be imposed under the statute. In their letters to

court officials earlier this month, Plaintiffs expressly asked those officials whether certain uses of courtroom audio recordings—such as playing a recording at a community event—could violate § 1-201. They also sought clarification as to whether the word "contempt," as it appears in § 1-201, refers to civil contempt or criminal contempt. Court officials, however, refused to respond to Plaintiffs' inquiries.

51.     In sum, the deep ambiguities in § 1-201's text—combined with court officials' unwillingness to provide any guidance whatsoever as to its meaning—render the statute unconstitutionally vague, both as to the conduct it prohibits and the penalties it imposes.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Declare that Maryland Code, Criminal Procedure § 1-201, as applied to lawfully obtained audio or video recordings, violates the First Amendment.

2.     Declare that Maryland Code, Criminal Procedure § 1-201, as applied to lawfully obtained audio or video recordings, is void for vagueness under the Due Process Clause of the Fourteenth Amendment.

3.     Declare that Plaintiffs may not be held in contempt (or otherwise subject to state sanction) for:

(a) posting online any lawfully obtained audio or video recordings of criminal proceedings that occurred in open court;

(b) including such recordings in any films;

22

(c) playing such recordings at public events;

(d) sharing such recordings over social media; or

(e) including such recordings on podcasts.

4.    Award attorneys' fees and costs to Plaintiffs.

5.    Grant any other relief that this Court deems appropriate.

Respectfully submitted,

ADAM HOLOFCENER
(D. Md. Bar No. 19579)
MARYLAND VOLUNTEER LAWYERS FOR
   THE ARTS
120 W. North Ave., Suite 305A
Baltimore, MD 21201
Tel.:  410-752-1633
adam@mdvla.org


Dated:  May 28, 2019

NICOLAS Y. RILEY *

  /s/  *Daniel B. Rice*
DANIEL B. RICE
(D. Md. Bar No. 20874)
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW
Washington, DC 20001
Tel.:  202-662-4048
Fax:  202-662-9248
nr537@georgetown.edu
dbr32@georgetown.edu

*Counsel for Plaintiffs*

  *   Admitted to practice in New York
     (NY Registration No. 5039607); *pro
     hac vice* admission pending.

## CERTIFICATE OF SERVICE

I certify that the foregoing will be served upon all Defendants via hand delivery by process server.

_/s/  Daniel B. Rice_
DANIEL B. RICE