IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRANDON SODERBERG, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-19-1559 |
| HON. W. MICHEL PIERSON, *et al.*, | * | |
| | * | |
| Defendants. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Brandon Soderberg ("Mr. Soderberg"), Baynard Woods ("Mr. Woods"), Qiana Johnson ("Ms. Johnson"), Open Justice Baltimore ("OJB"), Baltimore Action Legal Team ("BALT"), and Life After Release ("LAR") (collectively, "Plaintiffs"), bring this lawsuit against Defendants the Honorable W. Michel Pierson ("Judge Pierson"), the Honorable Sheila R. Tillerson Adams ("Judge Adams"), Patricia Trikeriotis ("Ms. Trikeriotis"), and Robin Watson ("Ms. Watson") (collectively, "Defendants"), alleging that Maryland's "Broadcast Ban," prohibiting the recording or broadcasting of criminal proceedings and codified at Maryland Code § 1-201 of the Criminal Procedure Article, violates the Free Speech Clause of the First Amendment and is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. Currently pending before this Court is Defendants' Motion to Dismiss. (ECF No. 23). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). This Broadcast Ban closely follows Rule 53 of the Federal Rules of Criminal Procedure applied by this Court, which is guided by overwhelming federal case authority upholding the constitutionality of such a restriction.

Accordingly, for the reasons that follow, Defendants' Motion shall be GRANTED, and Plaintiffs' Complaint (ECF No. 1) shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

In 1981, Maryland's General Assembly passed into law what is now known as the Broadcast Ban, a statute prohibiting the recording or broadcasting of criminal proceedings. Md. Code Ann., Crim. Proc. § 1-201 (West 2019).[1] Specifically, the statute provides that "a person may not record or broadcast any criminal matter, including a trial, hearing, motion, or argument, that is held in trial court or before a grand jury." *Id.* Further, "[t]his prohibition applies to the use of television, radio, and photographic or recording equipment." *Id.* A person who violates this statute "may be held in contempt of court." *Id.* This Maryland statute is consistent with Rule 53 of the Federal Rules of Criminal Procedure, adopted in 1946, which similarly bans the broadcasting of criminal proceedings in federal courts.

---

[1] The statute was originally codified as Article 27, § 467B of the Maryland Code. 1981 Md. Laws ch. 748, at 2782. It was re-codified, without substantive change, as Section 1-201 of the Criminal Procedure Article in 2001. 2001 Md. Laws ch. 10, at 85.

The six Plaintiffs in this case are three individuals and three community organizations. (Compl. ¶¶ 20-23, ECF No. 1.)  Plaintiffs Mr. Soderberg and Mr. Woods are Baltimore-based journalists who are working on a book and documentary film about the Baltimore Police Department's Gun Trace Task Force.  (*Id.* ¶ 21.)  In their documentary film and other reporting projects, Mr. Soderberg and Mr. Woods intend to use audio recordings and one video recording from proceedings in Baltimore City Circuit Court.  (*Id.*)  Plaintiffs Open Justice Baltimore ("OJB") and Baltimore Action Legal Team ("BALT") are "organizations that support community-centered efforts to improve the criminal-justice system."  (*Id.* ¶ 22.) OJB and BALT intend to use audio recordings of Baltimore City Circuit Court proceedings by playing the recordings at community events, posting the recordings online, sharing them on social media, and potentially including them on podcasts.  (*Id.*)  Plaintiff Ms. Johnson is a community organizer in Prince George's County, Maryland and the founder of Plaintiff Life After Release ("LAR"), a community-based organization seeking to empower individuals, families, and communities affected by the criminal justice system.  (*Id.* ¶ 23.)  Ms. Johnson and LAR intend to use audio recordings of Prince George's County Circuit Court proceedings by posting the recordings on their websites and playing them at meetings.  (*Id.*)

On May 2, 2019, Mr. Soderberg, Mr. Woods, OJB, and BALT sought clarity from Judge W. Michel Pierson of the Circuit Court of Maryland for Baltimore City about the ramifications of the intended uses of their recordings under Section 1-201 of Maryland's Criminal Procedure Article.  (*Id.* ¶ 28; Compl. Exhibits A-B, ECF Nos. 1-1, 1-2.)  They did not receive a response. (*Id.*)  On May 20, 2019, they sent a follow-up inquiry, which also did not garner a response from Judge Pierson.  (Compl. ¶ 28, ECF No. 1.)  On May 14, 2019, Ms. Johnson and LAR

sent a similar letter seeking clarification from Judge Sheila R. Tillerson Adams of the Circuit Court of Maryland for Prince George's County.  (*Id.* ¶ 30-31; Compl. Exhibit C, ECF No. 1-3.)  Judge Adams did not respond to that letter nor did she respond to a follow-up email requesting a response.  (*Id.*)

On May 28, 2019, Plaintiffs filed the instant suit in this Court against Judge Pierson, Judge Adams, and two court reporters, Ms. Trikeriotis and Ms. Watson, mounting a facial, pre-enforcement challenge to Maryland's Broadcast Ban, and contending that the prohibition on broadcasting violates the First Amendment and that the statute is void for vagueness. (Compl., ECF No. 1.)  They allege that the Broadcast Ban has had a "severe chilling effect" on their speech and reporting activities.  (*Id.* ¶ 24.)  They also allege that they have not published or shared the various court recordings in their possession out of fear of being held in contempt under Section 1-201.  (*Id.*)

**STANDARD OF REVIEW**

### I.        Motion to Dismiss under Rule 12(b)(1).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  This jurisdictional attack may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject-matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  In a facial challenge, as asserted in this case, a court will grant a motion to dismiss for lack of subject-matter jurisdiction "where a claim fails to

4

allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.  In making this determination, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

## II.     Motion to Dismiss under Rule 12(b)(6).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions

couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

The Defendants advance numerous grounds for dismissal.  First, they argue that Plaintiffs lack standing under the Broadcast Ban, as codified in Section 1-201.  Second, they argue that Plaintiffs have not stated a claim against Ms. Trikeriotis and Ms. Watson ("court reporter Defendants").  Third, they argue that Plaintiffs have failed to join indispensable defendants.  Fourth, they argue that Plaintiffs' First Amendment right to attend, review, and report on court proceedings does not extend to broadcasting court recordings.  Fifth and finally, they argue that Plaintiffs have not stated a void-for-vagueness claim upon which relief may be granted.

### I.      Standing.

Defendants argue that Plaintiffs lack constitutional standing because they cannot show a credible threat of prosecution under Section 1-201 and because Section 1-201 is a moribund statute.  (Defs.' Mot. at 8-11, ECF No. 23-1.)  In addition, Defendants assert that, even if Plaintiffs establish constitutional standing, the Court should decline to exercise federal jurisdiction under the prudential standing doctrine.  (*Id.* at 12-14.)

### A.  Constitutional Standing.

To establish Article III standing, a plaintiff must (1) show an injury in fact, (2) demonstrate a causal connection between the defendants' actions and the alleged injury, and (3) show that the injury will likely be redressed by a favorable outcome.  *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1995). A plaintiff mounting a pre-enforcement facial challenge to a penal law can establish constitutional standing by demonstrating (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," and (2) "a 'credible threat of prosecution' under the challenged law." *Hamilton v. Pallozzi*, 165 F. Supp. 3d 315, 320 (D. Md. 2016) (quoting *W. Va. Citizens Def. League, Inc. v. City of Martinsburg*, 483 Fed. Appx. 838, 839 (4th Cir. 2012) (per curiam)).

In the First Amendment context, "the assertion of a facial challenge to an ordinance…may warrant some relaxation of the prudential rule that a claimant may assert her own rights only." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011) (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)). Nevertheless, a plaintiff must still satisfy the injury-in-fact requirement. *Id.*

The Fourth Circuit recognizes "self-censorship" as a cognizable injury under the First Amendment, which occurs "when a claimant is 'chilled from exercising her right to free expression.'" *Id.* (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010)). Accordingly, "to demonstrate injury in fact, it [is] sufficient … to show that [one's] First Amendment activities ha[ve] been chilled." *Id.* (quoting *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007)) (alterations in original). "'Subjective' or speculative accounts of such a chilling effect, however, are not sufficient," and the chilling effect "must be objectively reasonable." *Id.* (first quoting *Laird v. Tatum*, 508 U.S. 1, 13-14 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), and then quoting *Zanders v. Swanson*, 573 F.3d 591, 593-94 (8th Cir. 2009)). Government action is "sufficiently chilling when it is 'likely [to] deter a person of ordinary firmness from the exercise

of First Amendment rights.'" *Id.* (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)) (alterations in original).

Plaintiffs have sufficiently alleged the chilling effect of Section 1-201 on their speech to warrant Article III standing. Specifically, Plaintiffs allege that they all seek to publish and share copies of Maryland criminal proceedings in their reporting and documentary projects "to enhance the public's understanding of the criminal-justice system." (Compl. ¶¶ 20-24, ECF No. 1.) They assert that they "have refrained from disseminating these recordings, however, out of fear that they might be held in contempt for doing so under § 1-201." (*Id.* ¶ 20.) To support their fear of prosecution, Plaintiffs reference a December 21, 2016 Baltimore Sun article titled "Court Officials Considered Contempt for 'Serial' Producers for Airing Courtroom Audio," which detailed how court officials publicly warned the producers of the podcast "Serial" that they may be held in contempt under Section 1-201 for playing excerpts of criminal trial proceedings on their podcast. (*Id.* ¶ 26 n. 6.)

In addition, Plaintiffs allege that Judge Pierson sent two letters in 2018 to a cable television network and a journalist, respectively, warning them about their use of video and audio recordings from Maryland court proceedings. (Compl. ¶ 26.) Defendants attached these two letters to their Motion to Dismiss, which the Court will consider as part of the Complaint. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 648 (D. Md. 2015) (quoting *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (the Court may consider "any document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity"). In his March 20, 2019 letter to counsel for Home Box Office, Inc.

("HBO"), Judge Pierson quoted Section 1-201 and stated, "[i]n compliance with this prohibition, HBO should immediately cease any broadcasting of Maryland criminal trials." (Defs.' Exhibit 3, ECF No. 23-4.)  In his April 21, 2019 letter to counsel for a journalist who intended to use recordings of Maryland criminal proceedings in an upcoming podcast, Judge Pierson referenced Section 1-201's prohibition on broadcasting and noted the journalist's signed agreement not to broadcast or copy the proceedings she requested.  Judge Pierson stated that, based on the journalist's signed agreement, "[i]t cannot be said, therefore, that she is unaware of the law or of her obligation not to broadcast criminal proceedings."  (Defs.' Exhibit 4, ECF No. 23-5.)

These allegations amount to more than subjective or speculative accounts of chilled speech.  Defendants' contention is that the Plaintiffs do not allege that they have been personally "threatened with prosecution," only that "other people have been notified that their conduct is regulated by § 1-201." (ECF No. 23-1 at 9.)  Yet, "it is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).  Indeed, "[a] non-moribund statute that 'facially restrict[s] expressive activity by the class to which the plaintiff belongs' presents such a credible threat, and a case or controversy thus exists in the absence of compelling evidence to the contrary." *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (quoting *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)) (alterations in original).  "This presumption is particularly appropriate when the presence of a statute tends to chill the exercise of First Amendment rights." *Id.*

Defendants attempt to avoid this presumption by arguing that Section 1-201 is not a criminal statute and that it is moribund.  These arguments are unavailing.  First, as Judge Hollander of this Court has held, "the threatened governmental action need not be a criminal prosecution in order for plaintiff to satisfy Article III's injury-in-fact requirement."  *Chase v. Town of Ocean City, Md.*, Civil Action No. ELH-11-1771, 2015 WL 4993583, at *7 (D. Md. Aug. 19, 2015) (citing *Cooksey v. Futtrell*, 721 F.3d 226, 238 n.5 (4th Cir. 2013)).  Second, Defendants' assertion that Section 1-201 has never been enforced in its 39-year history does not automatically render the statute moribund.  *See North Carolina Right to Life*, 168 F.3d at 710 (25-year history without enforcement of the statute in the challenged manner did not render statute moribund).  Judge Pierson's letters demonstrate that Section 1-201 is not moribund, as he specifically references Section 1-201's contempt provision, stating, "[i]n compliance with this prohibition, HBO should immediately cease any broadcasting of Maryland criminal trials." (Defs.' Exhibit 3, ECF No. 23-4.)  Indeed, similar conduct has been found to determine that a statute is not moribund.  *See Cooksey*, 721 F.3d at 237 (State Board's actions informing plaintiff that it could seek an injunction against him pursuant to the Act in question were evidence that the Act was not moribund, and the threat of prosecution was real). Moreover, a "[t]hreat of prosecution is especially credible when defendants have not 'disavowed enforcement' if plaintiffs engage in similar conduct in the future."  *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019) (citation omitted).

Plaintiffs' allegations demonstrate that they face a credible threat of prosecution under Section 1-201 and that their speech has been effectively chilled as a result.  Accordingly, this

Court is satisfied that Plaintiffs have constitutional standing to challenge Maryland's Broadcast Ban.

### B.  Prudential Standing Doctrine.

The judicial doctrine of prudential standing generally prevents a party with constitutional standing from enforcing the rights of third parties.  *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002) (citing *Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S. Ct. 1364 (1991)).  As this question of prudential standing is non-jurisdictional, *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012), Judge Xinis of this Court has previously noted that Rule 12(b)(6) provides the appropriate standard of review.  *See Bluefeld v. Cohen*, No. PX-15-2857, 2017 WL 1546406, at *4 n.2 (D. Md. Apr. 27, 2017), *aff'd*, 697 F. App'x 788 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1701 (2018) (citing *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013)) (noting that constitutional standing, which goes to subject-matter jurisdiction, generally falls under Rule 12(b)(1) while prudential standing is properly addressed under Rule 12(b)(6)).

Defendants frame their prudential standing argument in several ways.  First, they assert that Plaintiffs seek to litigate other people's rights because their theory of standing relies on letters to other people.  (ECF No. 23-1 at 12.)  Second, they raise federalism concerns, arguing that Plaintiffs seek adjudication of "generalized grievances more appropriately addressed in the representative branches," and that "Maryland's courts have a significant interest in their own contempt procedures and expertise in interpreting and administering them."  (*Id.* at 12-14 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).)

As discussed above, Plaintiffs are asserting their own rights to broadcast the recordings in their possession.   Plaintiffs allege that they are "journalists, activists, lawyers, and community organizers who seek to use recordings of Maryland criminal proceedings" and that they have "refrained from disseminating these recordings…out of fear that they might be held in contempt for doing so under § 1-201." (Compl. ¶ 20, ECF No. 1.)  Specifically, they intend to use these recordings in documentary films, reporting projects, community events, and podcasts. (*Id.* ¶¶ 21-23.)  The Court is satisfied that Plaintiffs have alleged standing based on a particularized legal injury, and that these allegations are not "generalized grievances more appropriately addressed in the representative branches." *Elk Grove*, 542 U.S. at 12; *see also Parkridge 6, LLC v. U.S. Dep't of Transp.*, 420 Fed. Appx. 265, 268 (4th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)) (a "generalized grievance" is one "shared in substantially equal measure by all or a large class of citizens."). The potential that other journalists, activists, lawyers, or community organizers may also have standing to challenge the Broadcast Ban does not preclude Plaintiffs from pursuing a challenge to the same statute based on their own allegations of chilled speech.

In addition, Defendants' argument that this Court "should [abstain] from adjudicating a challenge to a State's contempt process" essentially questions whether this Court should abstain from exercising its jurisdiction over this case under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). Federal courts have a "virtually unflagging" obligation to hear and decide those cases for which they have jurisdiction. *Sprint Communications Inc. v. Jacobs*, 571 U.S. 69, 77, 134 S.Ct. 584, 591, 187 L.Ed.2d 505 (2013) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).   Certain "exceptional

circumstances," however, "justify a federal court's refusal to decide a case in deference to the States."  *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).   In *Younger*, the Supreme Court held that considerations of federalism and comity required federal courts to abstain from exercising their equity jurisdiction to enjoin ongoing state criminal prosecutions.   Subsequently, the Supreme Court found that such considerations also justified abstention where there were "state civil proceedings that [were] akin to criminal prosecutions" or state proceedings "that implicate[d] a State's interest in enforcing the orders and judgments of its courts."  *Sprint Communications Inc.*, 571 U.S. at 72-73.   In each of these three defined categories of *Younger* abstention, an underlying state proceeding is required.  *See id.*

Defendants' concerns are futile because they have not identified any such ongoing criminal or civil state proceedings, nor is this Court aware of any such proceedings.  *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237-38 (1984) ("Under Younger-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in *ongoing* state judicial proceedings that concern important state interests." (emphasis added)); *see also* Wright & Miller, 17B Fed. Prac. & Proc. Juris. § 4252 (3d ed.).   Indeed, "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied."  *Steffel v. Thompson*, 415 U.S. 452, 475 (1974).   Defendants argue that "*if* there were an ongoing contempt proceeding against these plaintiffs, this Court would decline jurisdiction under the doctrine of *Younger* abstention."  (ECF No. 23-1 at 13

(emphasis added).)   That is not the case here, and Plaintiffs are free to pursue federal declaratory relief.[2]

Accordingly, the prudential standing doctrine does not prevent Plaintiffs from bringing their claims in this Court.

## II.   Court Reporter Defendants.

However, Plaintiffs fail to state a claim against the court reporter Defendants because court reporters do not play a role in the initiation or enforcement of contempt proceedings. Maryland Rule 15-205(b) provides a list of who may institute constructive criminal-contempt proceedings:  (1) the court; (1) the State's Attorney; (3) the Attorney General; (4) the State Prosecutor; and (5) "[t]he court or any person with actual knowledge of the facts constituting a constructive criminal contempt may request the State's Attorney, the Attorney General, or the State Prosecutor, as appropriate, to file a petition."  Similarly, Maryland Rule 15-206(b) provides a list of who may institute constructive civil-contempt proceedings:  (1) the court; (2) "[a]ny party to an action in which an alleged contempt occurred and, upon request by the court, the Attorney General"; and (3) "[i]n a support enforcement action where the alleged contempt is based on failure to pay spousal or child support, any agency authorized by law may bring the proceeding."

---

[2] Defendants also suggest that this Court should abstain from its exercise of jurisdiction under the *Pullman* doctrine.  (ECF No. 29 at 7 n.1.)  "*Pullman* abstention instructs federal courts to abstain where the dispute involves an ambiguous state statute, the interpretation of which may avoid the need to decide a federal constitutional issue."  *Little v. Mayor & City Council of Ocean City*, Civil Action No. ELH-18-360, 2019 WL 4689238, at *23 n.6 (D. Md. Sept. 26, 2019) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501-02, 61 S.Ct. 643, 85 L.Ed. 971 (1941)).  As will be discussed *infra*, Maryland's Broadcast Ban is not ambiguous, and there are not any issues of statutory interpretation to be resolved.  Thus, *Pullman* abstention is inappropriate.

Plaintiffs themselves acknowledge these Rules in their Complaint, and state, "[i]n practice, the administrative judge of a circuit or county typically bears the responsibility for initiating contempt proceedings for violations of § 1-201 that arise from the broadcast of recordings from that circuit or county's courts." (Compl. ¶ 18, ECF No. 1.)  Plaintiffs attempt to include court reporters as additional parties who may institute contempt proceedings by alleging that the "authorized custodian of those recordings—usually the court reporter for that circuit or county—shares responsibility for enforcing § 1-201's broadcasting ban," and, "[i]n practice, court reporters view the enforcement of § 1-201 as one of their responsibilities and typically play a role in deciding how court officials will respond to violations of the statute, including whether to pursue contempt sanctions."  (*Id.* ¶ 19.)  To support this allegation, Plaintiffs cite the recording request forms that Plaintiffs submitted to the court reporter Defendants to show that court reporters "frequently have direct knowledge of § 1-201 violations involving those recordings."  (ECF No. 26 at 35 (citing Defs.' Exhibit 4, ECF No. 23-5).)

The only provision under which the court reporters could be implicated is Rule 15-205(b)(5), providing that "any person with actual knowledge of the facts constituting a constructive criminal contempt may request the State's Attorney, the Attorney General, or the State Prosecutor, as appropriate, to file a petition."  However, holding court reporters liable as "any person[s] with actual knowledge" as to potential contempt proceedings would be an unreasonable interpretation of Maryland's contempt rules.  *See Johnson v. Nationwide Mut. Ins. Co.*, 388 Md. 82, 89, 878 A.2d 615 (2005) (quoting *Greco v. State*, 347 Md. 423, 429, 701 A.2d 419, 422 (1997) ("Our goal in interpreting statutes is to give them their 'most reasonable

interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used.'")).

Plaintiffs' allegations have no legal basis, and "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).   Accordingly, the claims against the two court reporter Defendants, Patricia Trikeriotis and Robin Watson, are dismissed with prejudice.

### III.   Criminal defendants are not necessary parties.

Defendants contend that under Rule 12(b)(7) of the Federal Rules of Civil Procedure, Plaintiffs have failed to join as indispensable defendants the criminal defendants from the recorded criminal proceedings in Plaintiffs' possession.   Specifically, Defendants argue that "the criminal defendants likely have unique personal and constitutional interests in their privacy to vindicate, which are not 'adequately represented by' the Judge Defendants."   (ECF No. 23-1 at 16 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008)).

Rule 12(b)(7) allows a court to dismiss an action for failure to join a party in accordance with Federal Rule of Civil Procedure 19.   This Court's analysis under a Rule 12(b)(7) motion to dismiss involves a two-step inquiry.   *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).   First, this Court must determine whether the party is necessary to the action.   *Id.*   Under Rule 19(a), a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties," or "the person claims an interest relating to the subject of the action" that a disposition of the action in the person's absence may "(i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons

already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed R. Civ. P. 19(a). "The inquiry contemplated by Rule 19(a) is a practical one, and is addressed to the sound discretion of the court." *Heinrich v. Goodyear Tire & Rubber Co.*, 532 F. Supp. 1348, 1359 (D. Md. 1982) (citing *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980)).

If the party is necessary but his inclusion in the action would destroy diversity, then the court proceeds to the second part of the inquiry, which requires the Court to decide if the party is indispensable under Rule 19(b). *Owens-Illinois, Inc.*, 186 F.3d at 440. The Court considers four factors: (1) the extent a judgment rendered would be prejudicial to the absent or existing parties; (2) whether relief can be shaped to lessen or avoid any prejudice; (3) whether a judgment will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed. Fed. R. Civ. P. 19(b). If the party is indispensable, meaning the action cannot proceed in that party's absence, then the case must be dismissed. *Owens-Illinois, Inc.*, 186 F.3d at 440. This analysis is not formalistic, and the Court must consider the particular factual setting presented. *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994); *see also Owens-Illinois, Inc.*, 186 F.3d at 441 ("Such a decision must be made pragmatically, in the context of each case, rather than by procedural formula … by considering 'the practical potential for prejudice' to all parties, including those not before it." (citation omitted)). The Court's determination under Rule 19(b) is an equitable one left to the Court's discretion. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The burden is on the party moving under Rule 12(b)(7) to show

that a party is necessary and indispensable. *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (citing *Owens-Illinois, Inc.*, 186 F.3d at 440).

Defendants do not identify, nor is this Court aware of, any criminal defendants who are claiming "an interest relating to the subject of [this] action." *See* Fed. R. Civ. P. 19(a)(1)(B). Thus, the criminal defendants are only necessary parties if Defendants can show that, "in [the criminal defendants'] absence, the court cannot accord complete relief among existing parties." *See* Fed. R. Civ. P. 19(a)(1)(A). The Defendants have not so shown. The concept of complete relief "refers to relief as between the persons already parties, not as between a party and the absent [party]." *Heinrich*, 532 F. Supp. at 1359 (citation omitted). Under the Defendants' reasoning, any party who may institute contempt proceedings under Section 1-201 is a necessary party, as the outcome of this case—the determination of Section 1-201's constitutionality—may affect their ability to bring contempt proceedings. Rules 12(b)(7) and 19 do not intend such a result.

Whether the criminal defendants are present in this case would not affect the declaratory relief sought by Plaintiffs as to the constitutionality of the Broadcast Ban, which is the only legal claim before this Court. *See Dixon v. Edwards,* 172 F. Supp. 2d 702, 712 (D. Md. 2001) (finding "no problem whatsoever of complete relief not being entered" because "[w]hether or not the [absent party] is present in the case would not affect any relief that could be granted to [Plaintiff] in these proceedings"); *see also McGovern v. Deutsche Post Global Mail, Ltd.*, No. Civ. JFM-04-0060, 2004 WL 912843, at *4 (D. Md. Apr. 28, 2004) (finding defendant had "not shown complete relief cannot be accorded" because "[t]he fact that [the non-party's] success and productivity as a corporation are affected by the outcome of the case is irrelevant

to the question of the enforceability of the agreements—the only legal claim currently before the court—and the relief that can be accorded in the form of a declaratory judgment"). Moreover, the Defendants' concern about litigating the absent criminal defendants' privacy and procedural interests is discounted by the fact that the recordings are already public. Accordingly, the criminal defendants are not necessary parties, and dismissal under Rule 12(b)(7) is not appropriate.

## IV.   First Amendment Claim.

The inevitable technological advancement in the way people communicate with one another, from text messages to podcasts, does not eliminate the State's vital interest in ensuring fair criminal trials.  As Chief Justice Warren cautioned over fifty years ago, "[t]here would be a real threat to the integrity of the trial process if the television industry and trial judges were allowed to become partners in the staging of criminal proceedings." *Estes v. State of Tex.*, 381 U.S. 532, 573 (1965) (Warren, C.J., concurring).  In keeping with this concern, Rule 53 of the Federal Rules of Criminal Procedure, originally adopted in 1946, provides, "the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom."  Maryland's Broadcast Ban similarly provides that "a person may not record or broadcast any criminal matter, including a trial, hearing, motion, or argument, that is held in trial court or before a grand jury."  Md. Code Ann., Crim. Proc. § 1-201 (West 2019).

The First Amendment to the United States Constitution states in pertinent part that "Congress shall make no law … abridging the freedom of speech, or of the press."  U.S. CONST. amend. I.  Plaintiffs challenge the constitutionality of Maryland's Broadcast Ban,

alleging that it violates these First Amendment guarantees. (Compl. ¶¶ 4-6, 37-45, ECF No. 1.)  They frame the Broadcast Ban as a complete prohibition on the publication or dissemination of truthful information.

## A.  Constitutional Framework.

While the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have not addressed the constitutionality of a statute prohibiting the broadcasting of criminal proceedings, every federal circuit court to consider the constitutionality of Rule 53 prohibiting the broadcast of federal criminal proceedings, or that of a similar state rule, has rejected the challenge.[3]  *Rice v. Kempker*, 374 F.3d 675 (8th Cir. 2004); *Conway v. United States*, 852 F.2d 187 (6th Cir. 1988) (per curiam); *United States v. Edwards*, 785 F.2d 1293 (5th Cir. 1986); *United States v. Kerley*, 753 F.2d 617 (7th Cir. 1985); *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16 (2d Cir. 1984); *United States v. Hastings*, 695 F.2d 1278 (11th Cir. 1983).  Many of those courts based their rejection on finding that Rule 53, or a similar state rule, was a valid time, place, and manner regulation.  *Rice*, 374 F.3d at 681 ("As a 'content-neutral time, place, and manner' restriction on speech, the [Missouri Department of Corrections'] Media Policy does not violate the First Amendment."); *Conway*, 852 F.2d at 188 (citations omitted) ("The very issue presented in this appeal has been decided by at least three federal circuit courts of appeals, and in each instance the constitutionality of Rule 53 has been upheld.  We agree with these rulings."); *Kerley*, 753 F.2d at 621 ("All we have in the case

---

[3] To be sure, a state's constitution may afford greater constitutional protections to its citizens than those afforded by the federal Constitution.  Indeed, New York's state constitution "provides more protection for speech than does the First Amendment to the United States Constitution." *People v. Santiago*, 185 Misc.2d 138, 154-55, 712 N.Y.S.2d 244 (2000) (citing *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 566 N.Y.S.2d 906, 567 N.E.2d 1270 (1991)). Here, however, Plaintiffs seek relief only under the United States Constitution, not the Maryland state constitution.

before us is a limitation on the manner of news coverage; the media can do everything but televise the trial.  The limitation can withstand constitutional scrutiny so long as it is reasonable and neutral, as with time, place, and manner restrictions generally."); *Hastings*, 695 F.2d at 1282 ("The federal rules in the case before us resemble 'time, place, and manner' restrictions.  Rule 53 and [Southern District of Florida] Local Rule 20 do not absolutely bar the public and the press from any portion of a criminal trial; rather they merely impose a restriction on the *manner* of the media's news gathering activities.").

Despite the absence of Supreme Court precedent on the constitutionality of a broadcast ban, the Supreme Court has indicated, in dicta, that "[n]o constitutional provision guarantees a right to televise trials."  *See Estes v. State of Texas*, 381 U.S. 532, 588 (1965) (Harlan, J., concurring).  The Supreme Court has, however, established that if a member of the press or public "lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order."  *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 273-76 (4th Cir. 2010) (outlining Supreme Court precedent on the publication of truthful information).  The Supreme Court has applied this standard in cases involving statutes that completely prohibited the publication of truthful information.  *See Bartnicki v. Vopper*, 532 U.S. 514 (2001) (statute prohibiting use of the contents of an illegal interception); *Florida Star v. B.J.F.*, 491 U.S. 524 (1989) (statute prohibiting any publication of a sexual offense victim); *Daily Mail*, 443 U.S. 97 (statute prohibiting newspapers from publishing without approval the name of a youth charged as a juvenile offender); *Oklahoma Publishing Co. v. Oklahoma County District Court*, 430 U.S. 308 (1977) (pretrial order

21

prohibiting any publication of name or photograph of juvenile); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) (statute imposing civil liability for a television station's publishing a victim's name).

The Supreme Court has also established the public's constitutional right of access to criminal trials. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). In *Richmond Newspapers*, the Supreme Court determined that the First and Fourteenth Amendments guarantee the public a right to attend criminal trials, but warned, "our holding today does not mean that the First Amendment rights of the public and representatives of the press are absolute." 448 U.S. at 581 n.18. The Court reasoned, "[j]ust as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic, so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial." *Id.* (citation omitted). In *Globe Newspaper*, the Supreme Court reaffirmed that public access to criminal trials is guaranteed under the First Amendment, finding unconstitutional a court's exclusion of the press and public from a criminal trial. 457 U.S. at 610. This right of access "is constitutionally satisfied when some members of both the public and the media are able to 'attend the trial and report what they have observed.'" *United States v. Moussaoui*, 205 F.R.D. 183, 185 (E.D. Va. 2002) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610 (1978)).

**B. The Broadcast Ban is properly analyzed as a time, place, and manner regulation.**

Plaintiffs urge this Court to apply the Supreme Court's standard established in *Daily Mail*, *Cox Broadcasting*, and their progeny regarding prohibitions on the publication of truthful information, to determine the constitutionality of the Broadcast Ban.  In order for such a prohibition to pass constitutional muster, there must be "a need to further a state interest of the highest order."  *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 273-76.  As discussed *supra*, this standard applies to prohibitions on *any* publication of the subject information.  *See Bartnicki v. Vopper*, 532 U.S. 514 (2001) (statute prohibiting use of the contents of an illegal interception); *Florida Star v. B.J.F.*, 491 U.S. 524 (1989) (statute prohibiting any publication of a sexual offense victim); *Daily Mail*, 443 U.S. 97 (statute prohibiting newspapers from publishing without approval the name of a youth charged as a juvenile offender); *Oklahoma Publishing Co. v. Oklahoma County District Court*, 430 U.S. 308 (1977) (pretrial order prohibiting any publication of name or photograph of juvenile); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) (statute imposing civil liability for a television station's publishing a victim's name).

The cases Plaintiffs rely on are illustrative.  In *Nebraska Press Association v. Stuart*, the Supreme Court found unconstitutional a pretrial order barring the press from "publishing or broadcasting" information about evidence presented at pretrial hearings.  427 U.S. 539 (1976).  The Supreme Court relied on *Cox Broadcasting* and similar cases to find that "prohibiting reporting or commentary on judicial proceedings held in public…is clearly invalid."  *Id.* at 570.  In *Oklahoma Publishing Co. v. District Court*, the Supreme Court, relying on *Cox Broadcasting* and *Nebraska Press Association*, found that a state trial judge's prohibition on "publishing,

broadcasting, or disseminating, in any manner," the name or photograph of a juvenile defendant was unconstitutional.  430 U.S. 308, (1977) (per curiam).  In *Bartnicki v. Vopper*, the Supreme Court relied on *Daily Mail* to find that a prohibition on disclosure of the contents of an illegally intercepted communication was unconstitutional.  532 U.S. 514, 535 (2001).  Finally, in *Ostergren v. Cucinelli*, the Fourth Circuit found unconstitutional a section of Virginia's Personal Information Privacy Act that provided "a person shall not … [i]ntentionally communicate another individual's social security number to the general public."  615 F.3d 263, 269 (4th Cir. 2010) (quoting Va. Code § 59.1–443.2(A)(1)).  The Fourth Circuit relied on "*Cox Broadcasting* and its progeny" to determine that enforcing this prohibition would violate the First Amendment.  *Id.* at 286-87.

Unlike the blanket prohibitions on publication and communication in the cases cited above, Maryland's Broadcast Ban is not a total prohibition on the publication of information that is conveyed in criminal proceedings.  It simply prohibits only the "record[ing] or broadcast[ing]" of such proceedings.  Md. Code Ann., Crim. Proc. § 1-201 (West 2019).  The public and the media remain free to publish the information they glean from attending or listening to the criminal recordings provided by the courts.  Indeed, the Supreme Court addressed this very distinction in *Warner Communications*.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610 (1978).  There, the Court determined that there was no First or Sixth Amendment right to copy tape-recordings played in a criminal trial "for broadcasting and sale to the public."  *Id.* at 591, 608-11.  The Supreme Court found the *Cox Broadcasting* decision inapplicable because "[t]here simply were no restrictions upon press access to, or publication

of any information in the public domain…the press—including reporters of the electronic media—was permitted to listen to the tapes and report on what was heard." *Id.* at 609.

Here, Plaintiffs similarly argue that they have a First Amendment right to broadcast the recordings in their possession to the public. *Warner Communications* clearly forecloses this right. *See* 435 U.S. at 609-10.  Accordingly, the *Daily Mail* and *Cox Broadcasting* line of cases do not apply in this context and this Court need not find a "state interest of the highest order" to find the Broadcast Ban constitutional.  Instead, in keeping with the federal circuit courts who have addressed the constitutionality of Rule 53 of the Federal Rules of Criminal Procedure, this Court considers Maryland's Broadcast Ban as a time, place, and manner regulation.

### C.  The Broadcast Ban is a valid time, place, and manner regulation.

If the government regulates speech based on its content, the restriction must pass strict scrutiny, or "be narrowly tailored to serve a compelling government interest." *Christian Legal Society v. Martinez,* 561 U.S. 661, 130 S.Ct. 2971, 2984 n.11, 177 L.Ed.2d 838 (2010).  In contrast, content-neutral "time, place, and manner" restrictions need only pass intermediate scrutiny. As the Fourth Circuit discussed in *American Entertainers, LLC v. City of Rocky Mount, North Carolina*, 888 F.3d 707 (4th Cir. 2018), the court will uphold a regulation under intermediate scrutiny "if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'"  888 F.3d at 716 (quoting *Satellite Broad. & Comm'ns Ass'n v. F.C.C.*, 275 F.3d 337, 255 (4th Cir. 2001)).

25

As the Supreme Court explained in *Reed v. Town of Gilbert, Arizona*, "[g]overnment regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." ——U.S.——, 135 S.Ct 2218, 2227, 192 L.Ed.2d 236 (2015) (citations omitted). There are two categories of content-based regulations. First, there are regulations that on their face "draw[] distinctions based on the message a speaker conveys." *Id.* (citation omitted). A regulation does this either by regulating speech by particular subject matter or by its function or purpose. *Id.* Second, facially neutral regulations may still be content-based if they "cannot be 'justified without reference to the content of regulated speech,'" or they "were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746 (1989)). On the other hand, if a "regulation was adopted for a purpose unrelated to the suppression of expression—e.g., to regulate conduct, or the time, place, and manner in which expression may take place," the regulation is content-neutral. *American Entertainers LLC v. City of Rocky Mount, North Carolina*, 888 F.3d 707, 715 (4th Cir. 2018) (quoting *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 512-23 (4th Cir. 2002)).

Plaintiffs assert that the Broadcast Ban is content-based because it applies only to the broadcast of *criminal* proceedings. (ECF No. 26 at 23.) Content neutrality is determined based on the "communicative content" of the speech that is restricted. *Reed*, 135 S.Ct. at 2226. There is nothing in the Broadcast Ban that discriminates on the content communicated in criminal proceedings. The ban prohibits broadcasting of *any* communicative content from criminal proceedings, whether the speech discusses criminal matters or not. Moreover, none of the federal circuit courts nor the district court in this circuit upholding the constitutionality

26

of Rule 53 found the Rule was content-based.  *See, e.g. Rice v. Kempker*, 374 F.3d 675 (8th Cir.

2004); *Conway v. United States*, 852 F.2d 187 (6th Cir. 1988) (per curiam); *United States v. Edwards*,

785 F.2d 1293 (5th Cir. 1986); *United States v. Kerley*, 753 F.2d 617 (7th Cir. 1985); *Westmoreland*

*v. Columbia Broadcasting System, Inc.*, 752 F.2d 16 (2d Cir. 1984); *United States v. Hastings*, 695 F.2d

1278 (11th Cir. 1983); *United States v. Moussaoui*, 205 F.R.D. 183 (E.D. Va. 2002).

Therefore, having determined that the Broadcast Ban is content-neutral, this Court

applies intermediate scrutiny.  The Broadcast Ban will pass intermediate scrutiny if it "furthers

a substantial government interest, is narrowly tailored to further that interest, and leaves open

ample alternative channels of communication."  *Am. Legion Post 7 of Durham, N.C. v. Durham*,

239 F.3d 601, 609 (4th Cir. 2001) (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288,

293 (1984).  As the Eleventh Circuit outlined in *Hastings*, a ban on broadcasting criminal

proceedings furthers the following substantial government interests: (1) ensuring fair trials for

the accused; (2) preserving order and decorum in the courtroom; and (3) "an institutional

interest in procedures designed to increase the accuracy of the essential truth-seeking function

of the trial." *Hastings*, 695 F.2d at 1283; *see also Kerley*, 753 F.3d at 621 (applying *Hastings*).  The

third interest is embodied by the Supreme Court's concerns in *Estes v. Texas*, wherein the Court

noted "television's probable adverse impact on jurors, witnesses, and other trial participants."

*Hastings*, 695 F.2d at 1283 (citing *Estes*, 381 U.S. 532, 544-51, 85 S.Ct. 1628, 1633-37, 14

L.Ed.2d 543 (1965)).

The Broadcast Ban furthers all of these substantial government interests.  It also leaves

open ample alternative channels of communication.  For example, the public is free to describe

the testimony and events conveyed in the recordings, listen to and read the transcripts, publish

the information from the proceedings in written form, or reenact court proceedings by reading aloud from the transcript. All of these modes of communication convey the same information. Finally, for the Broadcast Ban to be narrowly tailored, "it must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward*, 491 U.S. at 799)). The regulation "'need not be the least restrictive or least intrusive means of' serving the government's interests," but "the government still 'may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'" *Id.* (quoting *Ward*, 491 U.S. at 798-99)). The Broadcast Ban is narrowly tailored because it is designed to prohibit only the "record[ing] and broadcast[ing]" of criminal *trial* proceedings, which furthers all three of the substantial interests outlined above. The interests in ensuring a fair trial, preserving order in the courtroom, and protecting the institutional accuracy of truth-seeking in a criminal trial are all directly served by the Broadcast Ban. The Broadcast Ban carefully balances the public interest in information with trial participants' interests in fair trials.

As discussed *supra*, every federal circuit court to consider a challenge to Rule 53's constitutionality has rejected the challenge, many finding Rule 53 to be a valid time, place, and manner regulation. *See Rice*, 374 F.3d 675 (8th Cir. 2004); *Conway*, 852 F.2d 187 (6th Cir. 1988) (per curiam); *Edwards*, 785 F.2d 1293 (5th Cir. 1986); *Kerley*, 753 F.2d 617 (7th Cir. 1985); *Westmoreland*, 752 F.2d 16 (2d Cir. 1984); *Hastings*, 695 F.2d 1278 (11th Cir. 1983). In addition, the District Court for the Eastern District of Virginia has also rejected a constitutional challenge to Rule 53 and its local counterpart, finding them to be reasonable "manner" restrictions on access to public proceedings, and explaining, "[n]othing in Rule 53 prevents

members of electronic media from attending the trial, taking notes while seated in the gallery and reporting about it." *United States v. Moussaoui*, 205 F.R.D. 183, 185-86 (E.D. Va. 2002).

Notably, Plaintiffs' only attempt to distinguish the precedent on the constitutionality of Rule 53 of the Federal Rules of Criminal Procedure is to argue that Rule 53 "prohibits only 'broadcast[s]' that occur 'from the courtroom,'" while Maryland's Broadcast Ban does not employ the phrase "from the courtroom." (ECF No. 26 at 29-30.) The federal circuit cases finding Rule 53 or a state counterpart constitutional did not rely on any particular phrasing of the Rule. *See Rice*, 374 F.3d 675 (8th Cir. 2004); *Conway*, 852 F.2d 187 (6th Cir. 1988) (per curiam); *Edwards*, 785 F.2d 1293 (5th Cir. 1986); *Kerley*, 753 F.2d 617 (7th Cir. 1985); *Westmoreland*, 752 F.2d 16 (2d Cir. 1984); *Hastings*, 695 F.2d 1278 (11th Cir. 1983). Indeed, the Eleventh Circuit upheld the constitutionality of both Rule 53 and the Southern District of Florida's local rule counterpart, which were phrased significantly differently. *Hastings*, 695 F.2d at 1279. Specifically, the local rule provided, "all forms of equipment or means of photographing, tape-recording, broadcasting or televising within the environs of any place of holding court in the District, including courtrooms, chambers, adjacent rooms, hallways, doorways, stairways, elevators, or offices of supporting personnel whether the Court is in session or at recess, is prohibited." *Id.* at 1279 n. 4 (quoting Local Rule 20 (S.D. Fla.)). This different phrasing did not result in a different finding; the Court viewed them both as a prohibition on broadcasting. *Id.*

In sum, Plaintiffs offer no basis for this Court to deviate from the well-established precedent in its sister circuits that a prohibition on broadcasting criminal proceedings is a valid time, place, and manner regulation. This Court joins in the sentiment expressed by Judge

Brinkema of the United States District Court for the Eastern District of Virginia: "[T]he inability of every interested person to attend the trial in person or observe it through the surrogate of the media does not raise a question of constitutional proportion.  Rather, this is a question of social and political policy best left to the United States Congress and the Judicial Conference of the United States." *Moussaoui*, 205 F.R.D. at 186.  Similarly, the social and political policy of the Maryland Broadcast Ban is best left to the General Assembly of Maryland.  Plaintiffs' concerns about the Broadcast Ban do not warrant constitutional relief under the First Amendment to the United States Constitution.  Accordingly, Count I must be dismissed with prejudice.

### V.   Due Process Claim (Void-for-Vagueness).

Plaintiffs also assert a claim under the Fourteenth Amendment's Due Process Clause in Count II of the Complaint, arguing that the Broadcast Ban violates due process because "it fails to specify what activities qualify as 'broadcast[ing]' under the statute."  (ECF No. 26 at 25.)   A regulation is unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  However, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Id.* at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).  To prevail in a facial challenge, a plaintiff must show that "'no set of circumstances exists under which the [statute] would be valid,' i.e., that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican*

*Party*, 552 U.S. 442, 449 (2008).  Certainly, it appears that a facial challenge cannot succeed if a "statute has a 'plainly legitimate sweep.'"  *Id.*; *see also United States v. Comstock*, 627 F.3d 513, 518 (4th Cir. 2010).  A statute that has a "plainly legitimate sweep" has also been described as having "more than a conceivable application."  *Martin v. Lloyd*, 700 F.3d 132, 136-37 (4th Cir. 2012).

While the void-for-vagueness doctrine is "an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment," it has "broader application 'in the First Amendment context,' where its requirements are 'relaxed.'"  *Chase v. Town of Ocean City*, 825 F. Supp. 2d 599, 610 n.11 (D. Md. 2011) (quoting *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L.Ed.2d 650 (2008)).  Additionally, "if criminal penalties may be imposed for violations of a law, a stricter standard is applied in reviewing the statue for vagueness."  *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272-73 (4th Cir. 2019) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)).

Plaintiffs' facial due process challenge fails because Plaintiffs themselves acknowledge a variety of reasonable circumstances in which the statute would apply.  In their Complaint, Plaintiffs specifically allege that the producers of a podcast, a television network, and a journalist were all given warnings that their broadcasts of criminal proceedings, whether in a podcast or on television, were implicated under the Broadcast Ban.  (Compl. ¶ 26.)  In their Opposition, Plaintiffs state, "[t]here is no dispute that the term 'broadcast' can mean '[t]o disseminate [audio or audio-visual content] from a radio or television transmitting station to the receiving sets of listeners and viewers.'"  (ECF No. 26 at 27 (quoting Oxford English

Dictionary, https://oed.com/view/Entry/23508).)   They further concede that "[s]everal courts have endorsed this *uncontroversial* definition."  (*Id.* (emphasis added) (citing *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 871 (10th Cir. 2014); *Dubinsky v. Liberty Surplus Ins. Corp.*, No. CV 08-06744, 2010 WL 11506086, at *13 (C.D. Cal. June 15, 2010); *WTAR Radio-TV Corp. v. Commonwealth*, 217 Va. 877, 881 (1977))).  Plaintiffs also rely on an opinion from the United States District Court for the Middle District of Georgia, which not only upheld the constitutionality of Rule 53 of the Federal Rules of Criminal Procedure, but determined that "the contemporaneous transmission of electronic messages from the courtroom describing the trial proceedings, and the dissemination of those messages in a manner such that they are widely and instantaneously accessible to the general public, falls within the definition of 'broadcasting' as used in Rule 53."  *United States v. Shelnutt*, No. 4:09-CR-14 (CDL), 2009 WL 3681827, at *1-2 (M.D. Ga. Nov. 2, 2009).  Contrary to Plaintiffs' belief, this understanding is not in conflict with Defendants' assertion that Plaintiffs are free to "read back transcripts" or "reenact court proceedings," because those actions are not "contemporaneous transmission[s] of electronic messages from the courtroom."

Plaintiffs also assert that the Broadcast Ban is vague because it does not provide an answer to a range of hypothetical scenarios, including "[c]ould a journalist embed a recording in an online article subject to a paywall?" and "[c]ould a university student upload one to a shared internet folder accessible only to other students at the same university?"  (ECF No. 26 at 28.)  Such concerns do not constitute a vagueness claim because a "statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds."  *See United States v. Whorley*, 550 F.3d 326, 334 (4th Cir. 2008).

Again, this Court is persuaded by its sister circuits who have all upheld the constitutionality of a broadcast ban. *See Rice*, 374 F.3d 675 (8th Cir. 2004); *Conway*, 852 F.2d 187 (6th Cir. 1988) (per curiam); *Edwards*, 785 F.2d 1293 (5th Cir. 1986); *Kerley*, 753 F.2d 617 (7th Cir. 1985); *Westmoreland*, 752 F.2d 16 (2d Cir. 1984); *Hastings*, 695 F.2d 1278 (11th Cir. 1983).  Like every court to consider the issue, this Court does not find the term "broadcast" to be impermissibly vague.  The statute "covers a whole range of easily identifiable and constitutionally proscribable…conduct," including, as Plaintiffs concede, the transmission of audio or audio-visual content through radio or television, using courtroom video in a documentary film or courtroom audio in a podcast, and contemporaneous transmission of electronic messages from the courtroom describing the trial proceedings. *See Parker v. Levy*, 417 U.S. 733, 760 (1974) (quoting *United States Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 580-81 (1973)).  Accordingly, Plaintiffs have failed to state a claim for relief under the Due Process Clause of the Fourteenth Amendment, and Count II will be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 23) is GRANTED.  This action is DISMISSED WITH PREJUDICE in its entirety.

A separate Order follows.


Dated: January 14, 2020


\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge