Amici Supporting Appellants

_____

## JUDGMENT

_____

In accordance with the decision of this court, the judgment on the district court's dismissal of the plaintiffs' First Amendment Claim is vacated. This case is remanded to the district court for further proceedings consistent with the court's decision.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ PATRICIA S. CONNOR, CLERK

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1094

BRANDON SODERBERG; BAYNARD WOODS; OPEN JUSTICE BALTIMORE; BALTIMORE ACTION LEGAL TEAM; QIANA JOHNSON; LIFE AFTER RELEASE,

        Plaintiffs - Appellants,

   v.

HON. AUDREY J. S. CARRION, Administrative Judge for Maryland's Eighth Judicial Circuit; HON. SHEILA R. TILLERSON ADAMS, as Administrative Judge for Maryland's Seventh Judicial Circuit,

        Defendants - Appellees,

  and

PATRICIA TRIKERIOTIS, as Court Reporter for Baltimore City; ROBIN WATSON, as Court Reporter for Prince George's County,

        Defendants.

------------------------------

CATO INSTITUTE; FLOYD ABRAMS INSTITUTE FOR FREEDOM OF EXPRESSION; THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 23 MEDIA ORGANIZATIONS,

        Amici Supporting Appellants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:19-cv-01559-RDB)

Argued: January 28, 2021               Decided: June 15, 2021

Before KING, HARRIS, and RUSHING, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Harris and Judge Rushing joined.

**ARGUED:** Nicolas Y. Riley, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellants. Steven Marshall Sullivan, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. Eugene Volokh, UCLA SCHOOL OF LAW, Los Angeles, California, for Amicus Cato Institute. **ON BRIEF:** Adam Holofcener, MARYLAND VOLUNTEER LAWYERS FOR THE ARTS, Baltimore, Maryland; Daniel B. Rice, Institute for Constitutional Advocacy & Protection, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellants. Brian E. Frosh, Attorney General, Michele J. McDonald, Assistant Attorney General, Joseph Dudek, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. Clark Neily, CATO INSTITUTE, Washington, D.C.; Robert Bowen, Megan McDowell, Emily Rehm, UCLA SCHOOL OF LAW, Los Angeles, California, for Amicus Cato Institute. David A. Schulz, Alexandra Dudding, Julu Katticaran, Zoe Rubin, Media Freedom and Information Access Clinic, YALE LAW SCHOOL, New Haven, Connecticut, for Amicus Floyd Abrams Institute for Freedom of Expression. Jennifer A. Nelson, Gabriel Rottman, First Amendment Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Amici The Reporters Committee for Freedom of the Press and 23 Media Organizations.

2

KING, Circuit Judge:

Relevant to their appeal, the plaintiffs in this District of Maryland civil action have lodged a First Amendment challenge to section 1-201 of the Criminal Procedure Article of the Maryland Code, insofar as that statute prohibits and punishes the broadcasting of the official court recordings of state criminal proceedings (the "Broadcast Ban," or simply the "Ban"). In January 2020, the district court dismissed the entire action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See Soderberg v. Pierson*, No. 1:19-cv-01559 (D. Md. Jan. 14, 2020), ECF No. 30 (the "Opinion"). The court deemed the plaintiffs' First Amendment claim to be deficient on the premise that the Broadcast Ban constitutes a content-neutral regulation of the time, place, and manner of speech that survives intermediate scrutiny. As explained herein, we conclude that — because the Ban is properly assessed as a penal sanction for publishing information released to the public in official court records — it is subject to strict scrutiny under the Supreme Court's decisions in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979). Accordingly, we vacate the dismissal of the First Amendment claim and remand.

I.

A.

In 1981, the Maryland General Assembly enacted the Broadcast Ban, which was originally codified in article 27, section 467B of the Maryland Code. The Ban was recodified in 2001, without substantive change, in section 1-201 of the Criminal Procedure

3

Article. In delineating the Ban, section 1-201 provides that "a person may not . . . broadcast any criminal matter, including a trial, hearing, motion, or argument, that is held in trial court or before a grand jury." *See* Md. Code Ann., Crim. Proc. § 1-201(a)(1). The statute further provides that a person who violates the Ban — one who broadcasts the official court recordings of state criminal proceedings — "may be held in contempt of court." *Id.* § 1-201(c). The same language of section 1-201(a)(1) and (c) prohibits and punishes live broadcasts of criminal proceedings. Section 1-201 also bars and penalizes the recording of such proceedings, though the statute includes an exception for court-approved recordings made "to perpetuate a court record." *Id.* § 1-201(a)(1), (b)(2), (c).

Meanwhile, the Maryland Rules broadly require the electronic recording of proceedings, including criminal proceedings, in the state trial courts. *See* Md. R. 16-503 (rule for circuit courts); *id.* 16-502 (rule for district courts). The recording requirement applies to trials, hearings, the taking of testimony, and other proceedings conducted before a judge in a courtroom or by remote electronic means. According to the Complaint in this civil action, *see Soderberg v. Pierson*, No. 1:19-cv-01559 (D. Md. May 28, 2019), ECF No. 1, most state trial courts create audio recordings and some create video recordings of their proceedings.

The public generally has a right to obtain copies of official court recordings under the Maryland Rules, which provide that the circuit courts "shall make a copy of the audio recording or, if practicable, the audio portion of an audio-video recording, available to any person upon written request and, unless waived by the court, upon payment of the reasonable costs of making the copy." *See* Md. R. 16-504(h)(1); *see also id.* 16-502(g)(1)

(similar rule for district courts). The Complaint reflects that courts also have "occasionally provided copies of video recordings to members of the public upon written request." *See* Complaint ¶ 11 (explaining that the Maryland Rules neither require nor preclude courts from providing copies of video recordings). The Maryland Rules exclude from public disclosure the recordings of just a few types of proceedings, such as "proceedings closed pursuant to law" and those involving matters that "the court finds should and lawfully may be shielded from public access and inspection." *See* Md. R. 16-504(g), (h)(1) (exclusions for circuit court proceedings); *see also id.* 16-502(f), (g)(1) (same exclusions for district court proceedings).

The Complaint alleges that, although members of the public may legally obtain copies of the official court recordings of criminal proceedings, they are barred by the Broadcast Ban from then broadcasting those recordings. As the Complaint explains, the Ban "prohibits people from disseminating digital recordings of criminal court proceedings — even though the State itself makes copies of those recordings publicly available." *See* Complaint ¶ 4. That is because section 1-201 "prohibits the broadcast not only of *live* court proceedings but also of *previously recorded* proceedings, including recordings from cases that have long since ended." *Id.* ¶ 15. People are free, however, to broadcast official court recordings of state civil proceedings, as well as recordings of state appellate proceedings in both civil and criminal cases.

B.

The six plaintiffs in this federal civil action assert that the Broadcast Ban unconstitutionally stands in their way of disseminating lawfully obtained copies of the

5

official court recordings of state criminal proceedings. Plaintiffs Brandon Soderberg and Baynard Woods are Baltimore-based journalists who are writing a book and working on a documentary film about the Baltimore Police Department's Gun Trace Task Force. In their film and other reporting projects, Soderberg and Woods intend to use audio recordings and a video recording of criminal proceedings conducted in the Circuit Court of Baltimore City. Plaintiffs Open Justice Baltimore and Baltimore Action Legal Team are organizations that provide support for community-centered efforts to improve the criminal justice system. They intend to play audio recordings of Baltimore City criminal proceedings at community events, post the recordings online, share them on social media, and potentially include them on podcasts. Plaintiff Qiana Johnson is a community organizer in Prince George's County and the founder of plaintiff Life After Release, a community-based organization that seeks to empower individuals, families, and communities that are impacted by the criminal justice system. Johnson and Life After Release intend to use audio recordings of criminal proceedings in the Circuit Court of Prince George's County by posting them on websites and playing them at meetings.

    The plaintiffs filed their Complaint on May 28, 2019, against four defendants, including Judge W. Michael Pierson and Judge Sheila R. Tillerson Adams, state court judges in Baltimore City and Prince George's County sued in their official capacities. Judge Pierson has since been replaced as a defendant by his successor on the state court

6

bench, Judge Audrey J. S. Carrion. We refer herein to the defendant judges, who are represented by the Attorney General of Maryland, as the "State."[1]

The Complaint alleges the plaintiffs' First Amendment claim pursuant to 28 U.S.C. § 1983 as a facial, pre-enforcement challenge to the Broadcast Ban. In support thereof, the Complaint asserts that the Ban is subject to — and cannot withstand — the strict scrutiny review required by the Supreme Court's *Cox Broadcasting* and *Daily Mail* decisions. *See, e.g.*, Complaint ¶ 5 (alleging that the Ban contravenes the First Amendment principle that "when the press or the public 'lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order'" (quoting *Daily Mail*, 443 U.S. at 103)); *id.* ¶ 39 (emphasizing that the "principle applies with special force to information about public court proceedings" (citing *Cox Broad.*, 420 U.S. at 492)). The Complaint seeks declarations that the Ban is unconstitutional and that the plaintiffs may not be held in contempt for disseminating lawfully obtained copies of the official court recordings of state criminal proceedings.

C.

On July 18, 2019, the State filed a motion to dismiss the Complaint and argued, in pertinent part, that the plaintiffs' First Amendment claim should be dismissed under

---

[1] The district court dismissed the other two defendants, Patricia Trikeriotis and Robin Watson, court reporters in Baltimore City and Prince George's County also sued in their official capacities. Because the plaintiffs do not contest the dismissal of the defendant court reporters, they are not parties to this appeal.

7

Federal Rule of Civil Procedure 12(b)(6) on the theory that the Broadcast Ban need only satisfy intermediate scrutiny because it is a content-neutral regulation of the time, place, and manner of speech. As part of its theory, the State likens the Ban to Federal Rule of Criminal Procedure 53, a prohibition on live broadcasts of criminal proceedings that has been subjected to intermediate scrutiny by several of our sister courts of appeals and determined to be constitutional. *See* Fed. R. Crim. P. 53 ("Except as otherwise provided by statute or these rules, the court must not permit . . . the broadcasting of judicial proceedings from the courtroom."); *see also, e.g.*, *United States v. Kerley*, 753 F.2d 617, 620-22 (7th Cir. 1985) (recognizing consensus that Rule 53 is constitutional and upholding it as "reasonable and neutral" time, place, and manner restriction).

Under the State's theory, the Broadcast Ban is not subject to the strict scrutiny standard developed by the Supreme Court in *Cox Broadcasting* and *Daily Mail* because that standard applies only to absolute prohibitions on the publication of information in any form. The State underscores that, although the Ban proscribes the broadcasting of the official court recordings of criminal proceedings, it does not limit other means of disseminating the same information, such as publishing transcripts, reporting on what occurred during the proceedings, and airing reenactments.

For reasons explained in its Opinion of January 14, 2020, the district court adopted the State's theory and dismissed the First Amendment claim on the premise that the Broadcast Ban is akin to Federal Rule of Criminal Procedure 53. The Opinion faulted the plaintiffs for "offer[ing] no basis for this Court to deviate from the well-established precedent in its sister circuits that a prohibition on broadcasting criminal proceedings is a

8

valid time, place, and manner regulation." *See* Opinion 29. Moreover, the Opinion declared *Cox Broadcasting* and *Daily Mail* to be inapposite because "Maryland's Broadcast Ban is not a total prohibition on the publication of information that is conveyed in criminal proceedings." *Id.* at 24.

The plaintiffs have appealed from the district court's judgment, specifically contesting the dismissal of their First Amendment claim.[2] We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Upon our de novo review, we conclude that the district court erred in dismissing the plaintiffs' First Amendment claim under Federal Rule of Civil Procedure 12(b)(6). *See Akers v. Md. State Educ. Ass'n*, 990 F.3d 375, 378-79 (4th Cir. 2021) ("We review a Rule 12(b)(6) dismissal de novo."). As we first explain, the Broadcast Ban is subject to strict scrutiny under the Supreme Court's decisions in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979). Accordingly, as we next explain, it was error for the district court to instead apply intermediate scrutiny

---

[2] At the same time that it dismissed the plaintiffs' First Amendment claim, the district court made several rulings that are not at issue in this appeal. Those include rulings: dismissing the defendant court reporters, *see supra* note 1; declining to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing; declining to dismiss the Complaint under Rule 12(b)(7) for failure to join indispensable parties; and dismissing the only other claim brought by the plaintiffs, a Fourteenth Amendment void-for-vagueness claim, under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

9

in upholding the Ban. In these circumstances, we must reinstate the First Amendment claim for the district court's further consideration.

A.

The First Amendment provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech, or of the press." *See* U.S. Const. amend. I. In its *Cox Broadcasting* decision in 1975, the Supreme Court ruled that the First Amendment barred an invasion-of-privacy action against a television station for broadcasting a rape victim's name learned from publicly available court records. *See* 420 U.S. at 471-74 (explaining that lawsuit relied on Georgia law making it misdemeanor to publish or broadcast name of rape victim). In so doing, the Court highlighted "[t]he special protected nature of accurate reports of judicial proceedings." *Id.* at 492. The Court also emphasized the public interest in such reports and their "critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business." *Id.* at 495. As the Court saw it, by placing "information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Id.*

From there, the *Cox Broadcasting* Court reasoned that the First Amendment, together with the Fourteenth, "command[s] nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *See* 420 U.S. at 495. The Court reiterated:

> At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records. . . . Once true information is disclosed

10

> in public court documents open to public inspection, the press cannot be sanctioned for publishing it.

*Id.* at 496. The Court also cautioned that to the extent "there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information." *Id.* Nevertheless, the Court did not go so far as to hold that the publication of truthful information contained in official court records may never be punished.

In the wake of *Cox Broadcasting*, in its *Daily Mail* decision in 1979, the Supreme Court ruled that a West Virginia statute contravened the First and Fourteenth Amendments by making it a crime for a newspaper to publish, without the written approval of the juvenile court, the name of any youth charged as a juvenile offender. There, two newspapers had been indicted for printing the name of a minor accused of shooting and killing a classmate at a local junior high school. The newspapers learned the alleged assailant's name by interviewing witnesses, police officers, and a prosecutor at the school, and the name was also broadcast over several radio stations. *See Daily Mail*, 443 U.S. at 98-100 (describing events leading to indictment of newspapers and issuance of writ of prohibition by Supreme Court of Appeals of West Virginia).

Viewing the West Virginia statute "as a penal sanction for publishing lawfully obtained, truthful information," the *Daily Mail* Court easily concluded that the statute was unconstitutional. *See* 443 U.S. at 101-02. Indeed, the Court observed that the *Cox Broadcasting* decision and other recent precedent "demonstrate that state action to punish

11

the publication of truthful information seldom can satisfy constitutional standards." *Id.* at 102.[3]

From *Cox Broadcasting* and the other precedent, the *Daily Mail* Court drew and applied the following standard: "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *See* 443 U.S. at 103. The Court instructed that it "is not controlling" whether "the government itself provided or made possible press access to the information" (as in *Cox Broadcasting*), or whether the information was lawfully obtained in some other manner, such as by way of "routine newspaper reporting techniques" (as in *Daily Mail*). *Id.* So long as the information was lawfully obtained, "the state may not punish its publication except when necessary to further [a sufficiently substantial] interest." *Id.* at 104.

Notably, although the *Daily Mail* Court did not refer to its standard as "strict scrutiny," that term has since been used to describe the standard. *See, e.g.*, *Bartnicki v.*

---

[3] The cited precedent included cases involving both penal sanctions, *see, e.g.*, *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978), and prior restraints, *see, e.g.*, *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308 (1977). The *Daily Mail* Court explained that — although prior restraints had "been accorded the most exacting scrutiny in previous cases" — it was "not dispositive" whether the challenged West Virginia statute was "view[ed] as a prior restraint or as a penal sanction" because "even [a penal sanction] requires the highest form of state interest to sustain its validity." *See* 443 U.S. at 101-02. The Court invoked *Landmark Communications* for the principle that "when a state attempts to punish publication after the event it must . . . demonstrate that its punitive action was necessary to further the state interests asserted," and *Oklahoma Publishing* for its holding that once "truthful information was 'publicly revealed' or 'in the public domain' the court could not constitutionally restrain its dissemination." *Id.* at 102-03 (citing *Landmark Commc'ns*, 435 U.S. at 843; *Okla. Publ'g*, 430 U.S. at 311-12).

12

*Vopper*, 532 U.S. 514, 545 (2001) (Rehnquist, C.J., dissenting); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 189 (5th Cir. 2000). And of course, we employ the term "strict scrutiny" herein. The *Daily Mail* standard has been explained and applied by both the Supreme Court and our Court, in decisions including *Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (concluding in an as-applied First Amendment challenge that the state statute at issue was not "narrowly tailored to a state interest of the highest order"), and *Ostergren v. Cuccinelli*, 615 F.3d 263, 276, 286-87 (4th Cir. 2010) (same).

Such strict scrutiny review of the Broadcast Ban is clearly required here. Simply put, the plaintiffs' copies of the official court recordings of state criminal proceedings constitute "truthful information" that was "released to the public in official court records." *See Cox Broad.*, 420 U.S. at 495-96. As such, the broadcasting of those lawfully obtained recordings cannot constitutionally be punished "absent a need to further a state interest of the highest order." *See Daily Mail*, 443 U.S. at 103.

B.

Instead of engaging in the strict scrutiny assessment required by *Cox Broadcasting* and *Daily Mail*, the district court erroneously treated the Broadcast Ban as a content-neutral time, place, and manner regulation and thus subjected it to intermediate scrutiny. The court's first mistake was analogizing the Ban, at the State's urging, to Federal Rule of Criminal Procedure 53. As heretofore explained, Rule 53 prohibits live broadcasts of federal criminal proceedings. To be sure, section 1-201 of the Criminal Procedure Article of the Maryland Code — which contains the Broadcast Ban — similarly bars live broadcasts of state criminal proceedings. But section 1-201's prohibition on live

13

broadcasts is not the subject of this civil action. Rather, the plaintiffs are challenging the Broadcast Ban, i.e., section 1-201's distinct prohibition on the broadcasting of the official court recordings of state criminal proceedings. Consequently, the district court's comparison of the Ban to Rule 53 was inapt and the court erred in relying on persuasive authority upholding Rule 53 as a valid time, place, and manner regulation.

The district court further erred in refusing to apply strict scrutiny on the premise, advanced by the State, that *Cox Broadcasting* and *Daily Mail* demand such scrutiny only where there is an absolute prohibition on the publication of information in any form. That proposition is belied by *Daily Mail* itself, which involved a partial ban on the publication of information. As the *Daily Mail* Court explained, the challenged West Virginia statute did "not restrict the electronic media or any form of publication, except 'newspapers,' from printing the names of youths charged in a juvenile proceeding." *See* 443 U.S. at 104-05. Rather than treating the limited nature of the ban as a reason to subject it to intermediate scrutiny as a time, place and manner regulation, the Court considered it to be significant to the applicable strict scrutiny analysis and fatal to the constitutionality of the statute. Specifically, in light of the statute's narrowness, the Court concluded that "even assuming the statute served a state interest of the highest order, it does not accomplish its stated purpose." *Id.* at 105.

At bottom, the district court was wrong to apply intermediate scrutiny, rather than strict scrutiny, to the Broadcast Ban. The court therefore must reevaluate the Ban, in accordance with the principles of *Cox Broadcasting*, *Daily Mail*, and their progeny.[4]

### III.

Pursuant to the foregoing, we vacate the district court's dismissal of the plaintiffs' First Amendment claim. We remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[4] Because the district court incorrectly characterized the Broadcast Ban as a content-neutral time, place, and manner regulation, it never addressed whether the State can show that the Ban is "narrowly tailored to a state interest of the highest order," as required under the proper strict scrutiny standard. *See Fla. Star*, 491 U.S. at 541. Consistent with "the principle that the district court should have the first opportunity to perform the applicable analysis," *see Fusaro v. Cogan*, 930 F.3d 241, 263 (4th Cir. 2019), we remand so that the district court may decide in the first instance whether the Broadcast Ban can survive that rigorous review. We also do not unnecessarily reach and resolve other arguments raised by the plaintiffs, including that the Ban cannot withstand even intermediate scrutiny.

15

FILED: June 15, 2021

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1094,     Brandon Soderberg v. Audrey Carrion
1:19-cv-01559-RDB

———————————

NOTICE OF JUDGMENT

———————————

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** The time to file a petition for writ of certiorari runs from the date of entry of the judgment sought to be reviewed, and not from the date of issuance of the mandate. If a petition for rehearing is timely filed in the court of appeals, the time to file the petition for writ of certiorari for all parties runs from the date of the denial of the petition for rehearing or, if the petition for rehearing is granted, the subsequent entry of judgment. See Rule 13 of the Rules of the Supreme Court of the United States; www.supremecourt.gov.

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers must be submitted within 60 days of entry of judgment or denial of rehearing, whichever is later. If counsel files a petition for certiorari, the 60-day period runs from filing the certiorari petition. (Loc. R. 46(d)). If payment is being made from CJA funds, counsel should submit the CJA 20 or CJA 30 Voucher through the CJA eVoucher system. In cases not covered by the Criminal Justice Act, counsel should submit the Assigned Counsel Voucher to the clerk's office for payment from the Attorney Admission Fund. An Assigned Counsel Voucher will be sent to counsel shortly after entry of judgment. Forms and instructions are also available on the court's web site, www.ca4.uscourts.gov, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a Bill of Costs within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition and included in the docket entry to identify the cases to which the petition applies. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari. In consolidated criminal appeals, the filing of a petition for rehearing does not stay the mandate as to co-defendants not joining in the petition for rehearing. In consolidated civil appeals arising from the same civil action, the court's mandate will issue at the same time in all appeals.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 3900 words if prepared by computer and may not exceed 15 pages if handwritten or prepared on a typewriter. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE**: In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).

# U.S. COURT OF APPEAL FOR THE FOURTH CIRCUIT BILL OF COSTS FORM
(Civil Cases)

**Directions:** Under FRAP 39(a), the costs of appeal in a civil action are generally taxed against appellant if a judgment is affirmed or the appeal is dismissed. Costs are generally taxed against appellee if a judgment is reversed. If a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed as the court orders. A party who wants costs taxed must, within 14 days after entry of judgment, file an itemized and verified bill of costs, as follows:
- Itemize any fee paid for docketing the appeal. The fee for docketing a case in the court of appeals is $500 (effective 12/1/2013). The $5 fee for filing a notice of appeal is recoverable as a cost in the district court.
- Itemize the costs (not to exceed $.15 per page) for copying the necessary number of formal briefs and appendices. (Effective 10/1/2015, the court requires 1 copy when filed; 3 more copies when tentatively calendared; 0 copies for service unless brief/appendix is sealed.). The court bases the cost award on the page count of the electronic brief/appendix. Costs for briefs filed under an informal briefing order are not recoverable.
- Cite the statutory authority for an award of costs if costs are sought for or against the United States. See 28 U.S.C. § 2412 (limiting costs to civil actions); 28 U.S.C. § 1915(f)(1) (prohibiting award of costs against the United States in cases proceeding without prepayment of fees).

Any objections to the bill of costs must be filed within 14 days of service of the bill of costs. Costs are paid directly to the prevailing party or counsel, not to the clerk's office.

Case Number & Caption: _____

Prevailing Party Requesting Taxation of Costs: _____

| Appellate Docketing Fee (prevailing appellants): | | | Amount Requested: _____ | | | Amount Allowed: _____ | |
|---|---|---|---|---|---|---|---|
| **Document** | \multicolumn{2}{c}{**No. of Pages**} | \multicolumn{2}{c}{**No. of Copies**} | **Page Cost (≤$.15)** | \multicolumn{2}{c}{**Total Cost**} |
| | Requested | Allowed (court use only) | Requested | Allowed (court use only) | | Requested | Allowed (court use only) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **TOTAL BILL OF COSTS:** | | | | | | $0.00 | $0.00 |

1. If copying was done commercially, I have attached itemized bills. If copying was done in-house, I certify that my standard billing amount is not less than $.15 per copy or, if less, I have reduced the amount charged to the lesser rate.
2. If costs are sought for or against the United States, I further certify that 28 U.S.C. § 2412 permits an award of costs.
3. I declare under penalty of perjury that these costs are true and correct and were necessarily incurred in this action.

**Signature:** _____     **Date:** _____

### Certificate of Service

I certify that on this date I served this document as follows:

**Signature:** _____     **Date:** _____

FILED: June 15, 2021

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-1094
(1:19-cv-01559-RDB)

_____

BRANDON SODERBERG; BAYNARD WOODS; OPEN JUSTICE BALTIMORE; BALTIMORE ACTION LEGAL TEAM; QIANA JOHNSON; LIFE AFTER RELEASE

       Plaintiffs - Appellants

v.

HON. AUDREY J. S. CARRION, Administrative Judge for Maryland's Eighth Judicial Circuit; HON. SHEILA R. TILLERSON ADAMS, as Administrative Judge for Maryland's Seventh Judicial Circuit

       Defendants - Appellees

 and

PATRICIA TRIKERIOTIS, as Court Reporter for Baltimore City; ROBIN WATSON, as Court Reporter for Prince George's County

       Defendants

------------------------------

CATO INSTITUTE; FLOYD ABRAMS INSTITUTE FOR FREEDOM OF EXPRESSION; THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 23 MEDIA ORGANIZATIONS